Argued July 5, affirmed August 1, rehearing denied September 26, 1916.

## MACKENZIE *v.* DOUGLAS COUNTY.

(159 Pac. 625; 159 Pac. 1033.)

**Counties—Agents of State—Obligations.**

1. Counties are governmental agencies of the state, and where the state by enactment, for governmental purposes, imposes a constitutional obligation on the county, the county must fairly meet it.

**Counties—Audit of Books—Powers of Insurance Commissioner.**

2. Laws of 1913, page 546, Section 12, providing that audit of books of a county for years before or after 1914, may be made by or under supervision of the state insurance commissioner upon proper assurance that the expense will be borne by the county, authorizes the audit for years prior to 1914 only if the county agrees to pay the expense thereof, and for years after 1914 only for special audits other than the annual, and Section 14, authorizing employment of experts not to exceed the amount appropriated therefor, does not authorize the insurance commissioner to make a contract with expert accountants for a county, independent of its authorities so as to render the county liable for the cost, except where made by the commissioner.

**Statutes—Construction—"Proviso."**

3. While a proviso is commonly found at the end of the act or section, and is usually introduced by the word "provided," that word is not necessary, the matter and not the form of the succeeding words controlling; a "proviso" necessarily containing a condition or limitation upon the preceding matter.

**Statutes—Construction—General Words.**

4. The general intent will be controlled by the particular intent subsequently expressed.

Officers—Grants of Power—Construction.

5. Acts conferring statutory powers on an officer are strictly construed.

Statutes—Construction—Punctuation.

6. Although punctuation may be resorted to as an aid in construction when it tends to throw light on the meaning, yet it may be disregarded when it would tend to convey a meaning not in consonance with the rest of the act.

Counties—Statutes—Construction—Punctuation.

7. Laws of 1913, page 546, Section 12, as to audit of books of any "city, county school district," etc., though there is no official comma between "county" and "school district," will be construed as if the comma were present, so as to apply to counties, as required by the later provisions of the act.

Officers—Compensation of Experts—Liability.

8. The right of an officer to demand expenses incurred by him in the performance of official duty must be found in the constitution or the statute conferring it, either directly or by necessary implication; and a private citizen cannot have any greater right in this respect.

[As to rules of construction of statutes, see note in 12 Am. St. Rep. 826.]

Counties—Audit of Books—Compensation of Experts—Liability.

9. A claim for compensation of experts who audited county books cannot be allowed under Laws of 1913, page 545, unless the complaint shows that the insurance commissioner made the audit, or that the county officials agreed to pay therefor.

From Douglas: JAMES W. HAMILTON, Judge.

Department 2.    Statement by MR. JUSTICE BEAN.

This is an action by W. R. Mackenzie and C. A. Mackenzie, partners doing business under the firm name and style of W. R. Mackenzie & Son against Douglas County, Oregon, a municipal corporation, on a contract alleged to have been made on or about September 28, 1914, by plaintiffs and the state insurance commissioner on behalf of Douglas County under the provisions of Chapter 286, Laws of 1913, page 545, for the purpose of having a careful and accurate audit made of its books and accounts. Plaintiffs allege that the agreed compensation was to be $10 a day with their expenses, and that 42½ days were occupied in making

the audit mentioned, their expenses amounting to $153.50, thus aggregating $578.50.

Defendant demurred to the complaint for insufficiency of facts stated therein. The Circuit Court sustained the demurrer, and dismissed the action. Plaintiffs appeal. AFFIRMED. REHEARING DENIED.

For appellant there was a brief over the names of *Mr. M. E. Crumpacker* and *Mr. James C. Fullerton,* with an oral argument by *Mr. Crumpacker.*

For respondent there was a brief over the names of *Mr. George Neuner, Jr.,* District Attorney, and *Mr. Dexter Rice,* with an oral argument by *Mr. Neuner.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. It may be stated that counties are but agencies of the state for governmental purposes: *Grant County* v. *Lake County,* 17 Or. 453, 458 (21 Pac. 447) ; 2 Words and Phrases, p. 1653; 11 Cyc. 343. Where a state by enactment, in furtherance of its governmental purposes, imposes an obligation upon a county not in conflict with the Constitution of the state, that obligation becomes one which the county must fairly meet: *Grant County* v. *Lake County,* 17 Or. 453, 458 (21 Pac. 447) ; *Crossen* v. *Wasco County,* 10 Or. 111; *Wallowa County* v. *Oakes,* 46 Or. 33, 35 (78 Pac. 892).

Counsel for defendant claim: (1) That without the consent of the county the state insurance commissioner was not authorized by the act to make a contract for and incur liability on behalf of the county for the audit of its books; and (2) that plaintiffs' remedy, if any, is by writ of review to re-examine the decision of the county court in refusing to pay the claim.

2. The first question involves a construction of the act of 1913. In 1915 the legislature repealed the law: See Laws 1915, pp. 123, 328. The enactment provided that the state insurance commissioner should formulate and prescribe a uniform system of accounting for all offices and institutions using state money, and also for all counties of the state, and permitted such a system for road and school districts. The first nine sections thereof are devoted principally to provisions for the inauguration of such a system to be accomplished by January 1, 1914. That part of the statute particularly applicable to the question involved herein is as follows:

"From and after January 1, 1914, the state insurance commissioner shall at least once each year make a careful and accurate audit of the books and accounts of each institution or officer, expending state money, and of the books and accounts of each county of the state": Section 10.

"The expense of each such audit shall be certified by the state insurance commissioner to the county of which such audit was made, and shall be paid by such county direct to the person making the audit": Section 11.

"The expense of auditing the books and accounts of the institutions and officers expending state money shall be paid by the state from the funds appropriated by this act, upon the proper voucher of the state insurance commissioner. An audit of the books and accounts of any city, county school district, road district, port or other taxpaying district for any year or years before or after 1914, may be made by or under the supervision of the state insurance commissioner, upon proper assurance that the expense thereof will be paid by the county, city or other branch of government or the deposit of a sufficient sum therefor, by any individual": Section 12.

Section 17 required a complete report showing the financial status of each county and state institution to be published by the insurance commissioner each year, beginning on or before the year 1915. The meaning of the act is not instantly apparent, and, in order to ascertain the legislative intent, it will be necessary to consider the whole plan or scheme of the law. Provision was made for the payment of an audit in three different ways, namely: (1) An audit by the state insurance commissioner of the state books and accounts to be paid for by the state; (2) an annual audit by that official after January 1, 1914, of the books and accounts of each county of the state to be paid for by such county upon the certificate of the state insurance commissioner, and (3) an audit of the books and accounts of any city, county, school district, or taxpaying district which may be made by, or under the supervision of the state insurance commissioner upon proper assurance that the expense thereof will be paid by the county. As to the second provision for such payment, Section 10 provided for an official examination by the above commissioner of the books and accounts of each county of the state after January 1, 1914. Section 11 directed that the expense of such an audit should be certified by the insurance commissioner to the proper county, and by it paid directly to the person making the audit, and not to the state or through its usual official channels. It should be kept in mind that these provisions relate to the experting of county books by the commissioner, which will furnish that official with the information necessary as a basis for the annual report required by Section 17.

After providing for the manner of payment of expenses relating to state accounts, in Section 12 we find a proviso that:

"An audit of the books and accounts of any city, county school district, road district, port or other tax-paying district for any year or years before or after 1914, may be made by or under the supervision of the state insurance commissioner, upon proper assurance that the expense thereof will be paid by the county, city or other branch of government. * * "

This quoted part of the section contains all the authorization found in the law for the experting of county books "under the supervision of the insurance commissioner" as distinguished from being done by that official.

It appears that the lawmakers had in mind that in many of the counties of the state an audit of the affairs of the county had already been made up to about the date of the passage of the act, and, by the latter part of Section 12 it was intended to provide for the experting of county books by the insurance commissioner, or under his supervision, for years prior to 1914, dependent upon the assurance of the county authorities that the expense would be borne by that branch of the government. The provision for such an audit after 1914 is believed to apply to any city or taxpaying district other than a county, or to some special audit of county business, such as the expenditure of a large fund for some improvement, which its officials might desire to be experted without waiting for the annual audit. This view is strengthened when we remember that the law clearly contemplated that the system should be in vogue so that the financial affairs of the state and counties should be under the official eye of the insurance commissioner from and after January 1, 1914, and the experting of the books of other taxpaying districts left conditional under the latter part of Section 12. By Section 14 the commissioner was

authorized to employ such clerical and expert assist-
ance on such terms as he might deem best, in the per-
formance of the duties imposed upon him by the act,
not to exceed in any year the total amount appropri-
ated therefor.   It is plain that this section does not
relate to the employment of experts to be compensated
by a county.   Nowhere in the law do we find authority
for the insurance commissioner to make a contract with
expert accountants for a county, independent of its
authorities, nor to so render the county liable for the
cost of making such audit save when it is made by that
official.

3. The official auditing of the accounts of a county
by the state insurance commissioner and the making
of a contract for the experting of such books by an in-
dependent accountant are two different things.   The
commissioner is empowered by Section 16 to subpoena
and examine witnesses in order to ascertain the true
status of any item of account which it is his duty to
audit.   For this purpose that official is clothed with
the same authority as a circuit judge, plainly provid-
ing for an official audit of the books and accounts to
be made by the commissioner.   By this construction
of the statute it seems that every section and clause
is given a meaning in accordance with the legislative
intent.   To turn on the light of some of the rules of
construction in our aid, as the mechanical arrange-
ment of the latter sections and clauses of the statute
are not methodical, we note as authority for the term
''proviso'' which we have applied to the latter part of
Section 12 that:

''A proviso is a clause added to a statute, or to a
section or part thereof, which introduces a condition
or limitation upon the operation of the enactment, or
makes special provision for cases excepted from the

general provisions of the law, or qualifies or restrains its generality, or excludes some possible ground of misinterpretation of its extent'': Black, Interpretation of Laws, § 107.

4. A proviso is commonly found at the end of the act or section to which it applies, and it is usually introduced by the word "provided." This, however, is not necessary to determine its character. It is the matter of the succeeding words, and not the form, that determines its legal character: Id., p. 270. Section 110 of the same work reads thus:

"The natural and appropriate office of a proviso to a statute, or to a section thereof, is to restrain or qualify the provisions immediately preceding it. Hence it is a rule of construction that it will be confined to that which directly precedes it, or to the section to which it is appended, unless it clearly appears that the legislature intended it to have a wider scope.'.'

"The general intent will be controlled by the particular intent subsequently expressed": 2 Lewis' Sutherland, Stat. Const., § 351.

5. Acts which confer statutory power upon an officer are strictly construed: Id., § 562.

If the portion of Section 12 to which we have referred had been introduced by the word "provided," while it would not have changed the legal effect thereof, we doubt if this litigation would have resulted.

6, 7. It is contended by counsel for the plaintiffs that, there being no official comma after the word "county," where it first appears in Section 12, as shown by the session laws and legislative journal, the words "county school district" there used refer to a school district of the county, and that the limitation does not apply to auditing the books of a county. The word "county," appearing the second time in the pro-

viso authorizing an audit "upon proper assurance that the expense thereof will be paid by the county," seems to refute such a contention. It is not usual for county authorities to assume the payment of such expenses for school districts or other taxpaying districts except for the county itself. The point is not well taken. The language of the act does not indicate the meaning as claimed. It is a well-known rule of statutory construction that, although punctuation may be resorted to as an aid in construction when it tends to throw light on the meaning, yet it may be disregarded when it would tend to convey a meaning to a section not in consonance with the other parts of the act: *Commonwealth* v. *Kelley,* 177 Mass. 221 (58 N. E. 691); *Stiles* v. *Guthrie,* 3 Okl. 26 (41 Pac. 383).

8. It is an inflexible rule that the right even of an officer to demand expenses incurred by him in the performance of official duty must be found in the Constitution of the statute conferring it, either directly or by necessary implication; and a private citizen could not have any greater right in this respect: *Jackson* v. *Siglin,* 10 Or. 93; *Pugh* v. *Good,* 19 Or. 85, 92 (23 Pac. 827); *Houser* v. *Umatilla County,* 30 Or. 486, 489 (49 Pac. 867); *Baker County* v. *Benson,* 40 Or. 207, 212 (66 Pac. 815).

9. The claim asserted in the complaint does not show that the audit of the county books and accounts was made by the state insurance commissioner, nor that the officials of the county of Douglas made assurance or agreed that the expenses thereof would be paid by the commissioner. The contract alleged in the complaint was not authorized by the statute. This conclusion renders unnecessary a discussion of the other question raised. The demurrer to the complaint was

therefore properly sustained by the trial court.   The judgment is affirmed.

AFFIRMED.   REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE HARRIS concur.

MR. JUSTICE EAKIN absent.

———————

Denied September 26, 1916.

ON PETITION FOR REHEARING.

(159 Pac. 1033.)

*Mr. M. E. Crumpacker* and *Mr. James C. Fullerton,* for the petition.

*Mr. George Neuner, Jr.,* District Attorney, and *Mr. Dexter Rice, contra.*

Department 2.   MR. JUSTICE BEAN delivered the opinion of the court.

Passing by the mere disputatious assertions which are of little assistance in the construction of a statute, we note that the petition for a rehearing in this case is based largely upon the theory that the court found that the state insurance commissioner was not authorized to audit the accounts of a county of the state for the year 1914 and collect pay therefor from such county.   This is not the conclusion indicated by the former opinion.   What we held was that the claim, as shown by the record, was not for the services of that official, but for those of an entirely different person; that the audit of the books of Douglas County was not made by a state official or contem-

plated by the law in question. Neither did the commissioner in any way stand as sponsor for such audit. We simply reassert the substance of our former opinion. We are not aware that we can find language to express the matter plainer than formerly. However perfectly the learned counsel for plaintiff may expound the statute in question, it is certain that for some reason he misconstrues the memorandum made by the court. All that we find added to the argument in the request for a rehearing is the opinion of the former able Attorney General. He advised the insurance commissioner as follows:

"I would consequently advise that under said Chapter 286, it is your duty to audit the accounts of each county annually, and it is the duty of the several counties to pay your deputy making such audit, and that the audits of the lesser governmental units of the county are permissive, but not compulsory."

Suffice it to say in regard thereto that in so far as the case under consideration is concerned, the audit of the accounts for which compensation is claimed does not appear to have been made in accordance with such advice. The legislature will soon be in session, and if a state officer has been misled by an ambiguous statute, it is in its power to prevent any loss from being suffered.

After a careful examination of the petition herein, and also of that in the companion case of *Berridge* v. *Marion County, ante,* p. 391 (159 Pac. 628), we adhere to our former opinion.

AFFIRMED.    REHEARING DENIED.

Mr. Chief Justice Moore, Mr. Justice Burnett and Mr. Justice Harris concur.

Mr. Justice Eakin absent.