Argued December 13, 1918, reversed and remanded February 11, rehearing denied March 11, 1919.

## MACKENZIE v. DOUGLAS COUNTY.

(178 Pac. 350.)

**Counties—Payment for Services Rendered—Powers of Legislature.**

1. The legislature had the power to pass Laws of 1917, Chapter 252, a curative act, authorizing every county the official books of which were audited, under Laws of 1913, Chapter 286, by accountants at request of insurance commissioner to pay accountants for their services, although their claim had been rejected by the county commissioners when presented under Chapter 286.

**Judgment—Res Judicata—Change in Law.**

2. Judgment that plaintiff accountants who audited books of defendant county at request of insurance commissioner were not entitled to recover, under Laws of 1913, Chapter 286, where county was not a party to the contract, was not *res judicata* in suit under Laws of 1917, Chapter 252; a curative act authorizing county to pay for such services.

**Counties—"County."**

3. A "county" is not an independent governmental entity, but a *quasi* corporation created by legislative fiat for governmental purposes, and subject to the legislative will in all matters not prohibited by some constitutional restriction.

> [As to counties as municipal corporations, see note in Ann. Cas. 1914C, 968.]

**Pleading—Demurrer—Admissions.**

4. Upon demurrer it must be assumed that complaint is true.

**Constitutional Law—Curative Acts—Power of Legislature.**

5. What the legislature might have authorized in the first instance, it can ratify afterwards, so long as no vested rights have intervened.

**Counties—Appropriations—Power of Legislature.**

6. As the legislature may appropriate money to pay for services rendered in good faith, where there has been no contract whatever it may authorize one of its governmental agencies, such as a county, to do the same thing.

From Douglas: James W. Hamilton, Judge.

Department 2.

This is an appeal from the judgment of the Circuit Court of the State of Oregon for Douglas County, dismissing a writ of review, which shows that in 1914

appellants were, and still are, duly certified public accountants of the State of Oregon, and during said year audited the county books and records of Douglas County, Oregon; that the same was done at the request of the insurance commissioner of the State of Oregon, and was authorized and directed by Chapter 286 of the General Laws of Oregon for the year 1913. Said commissioner employed the appellants to make the audit and contracted with them that the said county would pay them the sum of $10 per day and their traveling expenses and board while making such audit. That appellants completed the audit about November, 1914, and then presented their bill for said services and expenses, amounting to $578.50, to the board of county commissioners of said county, and the same was by said board wholly disallowed.

Thereafter appellants commenced an action in the Circuit Court of the State of Oregon against said county therefor, and said Circuit Court held that the said commissioner was not authorized to contract with third parties to audit the county books and records without the county being a party to the contract and dismissed the action, and on appeal to the Supreme Court of the State of Oregon the decision was affirmed: 81 Or. 442 (159 Pac. 625, 1033).

Thereafter the legislative assembly of the State of Oregon for the year 1917 enacted Chapter 252, Gen. Laws of Oregon for that year, obligating the several counties to make payment to accountants so employed for auditing the official books and accounts of the several counties under Chapter 286, and that after said act went into effect and on or about December 5, 1917, and under said chapter, appellants presented their said claim and bill for services in auditing the books and records of Douglas County, Oregon, as aforesaid,

claiming reasonable compensation for services rendered, and the board of county commissioners wholly rejected and disallowed the same, claiming said Chapter 252 to be unconstitutional. Appellants then sued out a writ of review to the Circuit Court of the State of Oregon for Douglas County, which court affirmed the decision of the board of county commissioners and dismissed the writ, from which order plaintiffs appeal.

REVERSED AND REMANDED.

For appellants there was a brief over the names of *Messrs. Crawford & Crawford* and *Mr. J. O. Watson,* with an oral argument by *Mr. Andrew M. Crawford.*

For respondents there was a brief and an oral argument by *Mr. George Neuner, Jr.,* District Attorney.

McBRIDE, C. J.—Sections 10 and 11 of Chapter 286, Gen. Laws of 1913, provide that:

"From and after January 1, 1914, the State Insurance Commissioner shall at least once each year make a careful and accurate audit of the books and accounts of each institution or officer, expending state money, and of the books and accounts of each county of the state.

"The expense of each such audit shall be certified by the State Insurance Commissioner to the county of which such audit was made, and shall be paid by such county direct to the person making the audit."

That official, instead of making the audit provided for personally or by deputy, contracted with plaintiffs to examine and audit the books of Douglas County at an agreed compensation of $10 per day and traveling expenses and board while so engaged. In supposed pursuance of the act above referred to, plaintiffs made the examination of the books and their bill was certified to the County Court, which refused to allow the

same, and thereupon plaintiffs brought action for the recovery of the amount so certified.

In an opinion which is reported in 81 Or. 442 (159 Pac. 625, 1033), this court held that the claim as shown by the record was not for the services of the official but for the services of plaintiffs, and that such audit was not that of the insurance commissioner, adding, however, by way of *dictum:*

"The legislature will soon be in session and if a state officer has been misled by an ambiguous statute, it is in its power to prevent any loss from being suffered."

Thereafter the legislature passed an act (Chap. 252, Gen. Laws 1917), the preamble of which recited the passage of Laws of 1913, Chapter 286, the substance of the act and continued as follows:

"WHEREAS, acting under said Chapter 286, said State Insurance Commissioner duly appointed, employed and authorized various public accountants to examine and audit the official books and accounts of the several counties of this State; and,

"WHEREAS, certain of said public accountants duly and efficiently examined and audited the official books and accounts of the several counties pursuant to said Chapter 286 and under the direction of the State Insurance Commissioner, and the said State Insurance Commissioner duly certified to the several counties the amounts due for such audit; and

"WHEREAS, certain counties, of whose books and accounts, audits and examinations were duly made under said Chapter 286 aforesaid, have refused to pay the expenses of such audit and have refused to compensate the accountants who made the same, and the Supreme Court of the state of Oregon has held that the said counties were not liable for the charges therefor and has suggested appeal to the Legislature; and

"WHEREAS, said audit and examination was fully and efficiently done and said counties acquiesced in the

same and aided the said accountants in making the same and never objected thereto, until payment was demanded, and have been greatly benefited thereby, and said accountants have incurred a considerable personal expense and said claim should in justice and fairness be paid by the several counties; now, therefore,

"Be It Enacted by the People of the State of Oregon:

"Section 1. That every county of the state of Oregon, the official books and accounts of which were examined and audited under Chap. 286, Gen. Laws of Oregon for 1913, and which have not paid the accountants making such audits and examination, be and they hereby are authorized and empowered to pay such sum or sums to such accountants as in the judgment of the county court[s,] respectively, are just and equitable."

After this act went into effect plaintiffs again presented their claim, which being disallowed, they began this action.

1, 2. The appeal presents these questions for adjudication:

1st. Had the legislative assembly power to authorize or direct payment for services rendered at the request of a state officer relative to a governmental matter, without regard to the fact that the claim had once been rejected when presented under a former act?

2d. Is the former action so far *res adjudicata* as to be a bar to the present action?

3. Preliminary to a particular discussion of the two questions above stated, it may not be inappropriate to consider the relation of a county to the state. We think the decisions may be said to be uniform that a county is not an independent governmental entity— is not even a corporation in the same sense that municipalities are corporations. It is a *quasi* corporation

created by legislative fiat for governmental purposes and subject to the legislative will in all matters not prohibited by some constitutional restriction.

As said in *Yamhill County* v. *Foster,* 53 Or. 124 (99 Pac. 286):

"A county is not a private corporation, and its rights are not to be determined by the law applicable to such a corporation. It is merely a political agent of the state, created by law for governmental purposes, and is charged with the performance of certain duties for and on behalf of the state."

The same doctrine is announced in *Miller* v. *Henry,* 62 Or. 4 (124 Pac. 197, 41 L. R. A. (N. S.) 97), and in *Mackenzie* v. *Douglas County,* 81 Or. 442 (159 Pac. 625, 1033), we say:

"Counties are but agencies of the state for governmental purposes"; and, further: "Where a state by enactment in furtherance of its governmental purposes imposes an obligation on a county, not in conflict with the constitution of the state, that obligation becomes one which the county must fairly meet."

The question is thoroughly considered in *State ex rel.* v. *Cummings,* 130 Tenn. 566 (172 S. W. 290), and re-reported in L. R. A. 1915D, 274, where numerous decisions cited in the note seem ample to sustain the principal case.

4. There can be no question but that the legislature had full power in the first instance to have directed the insurance commissioner to employ competent experts to audit the books and accounts of the various counties, and to require the counties to pay for the work so performed. By an ambiguous statute they placed this labor upon the commissioner in serene disregard of the fact that if he personally had tried to perform it he would have done nothing else during

his term of office.   Trying to do the best he could, he
let a contract to others to do what a blunder in the
statute required him to do personally, and if the com-
plaint is true, as must be assumed upon this demurrer,
plaintiffs have performed the work, the state and the
county have had the benefit of their labor and they
have not been paid.

5. It is a rule supported by a multitude of authori-
ties that what the legislature might have authorized in
the first instance it can ratify afterwards, so long as
no vested rights have intervened.   This has been held,
not only with regard to counties but with respect to
municipal corporations whose character approaches
much more nearly to that of a private corporation
than does that of a county: *Miller* v. *Henry,* 62 Or. 4
(124 Pac. 197, 41 L. R. A. (N. S.) 97), and cases there
cited.   This seems to be the rule everywhere but in
those states where the enactment of retroactive stat-
utes is prohibited by their Constitution.   The statute
here under consideration is a curative statute and such
as it was within the power of the legislature to pass,
unless the judgment in the previous action was *res
adjudicata* in the full sense of that term.

6. Without any extended discussion of the question
it is sufficient to say that the act in question was not
an encroachment upon judicial power.   It recognized
the fact that the judgment was valid according to the
statute as it then stood; that when that decision was
rendered the contract under which plaintiffs per-
formed their work was in a technical sense unauthor-
ized.   But the legislature may appropriate money to
pay for services rendered in good faith where there
has been no contract whatever.   It can and does appro-
priate money by the means of relief bills in many in-
stances, and if it can pay for services rendered where

there has been no formal contract it can authorize or require one of its governmental agencies to do the same thing.

As stated by Judge SUTHERLAND:

"It is no objection to a curative act that it validates what has previously been declared invalid in a judicial proceeding. The judgment may furnish the occasion for the act. Of course the legislature cannot annul or set aside the judgment of a court, but it may remove a defect upon which a judgment proceeded": 2 Lewis' Sutherland's Stat. Cons. 1237.

*Steele County* v. *Erskine,* 98 Fed. 215 (39 C. C. A. 173), is an instructive case, in which the court says:

"The contention that the former judgment is a bar to this action is equally untenable. The conclusive character of a judgment extends only to identical issues, and they must be such, not merely in name, but in fact and in substance. If the vital issue of the latter litigation has been in truth already determined by an earlier judgment, it may not be again contested; but, if it has not,—if it is intrinsically and substantially an entirely different issue, even though capable of being described in similar language, or by a common form of expression, then the truth is not excluded, and the judgment no answer to the different issue: *Palmer* v. *Hussey,* 87 N. Y. 303, 306. The former judgment between these parties simply declared the contract unenforceable because it was made without legislative authority. How can such a judgment be a bar to an action upon the same contract after it has received the legislative sanction? Judgments declare the rights of parties at the time they are pronounced, but do not preclude the assertion of rights subsequently acquired. In reply to an objection identical with that which we are now considering, the supreme court said: 'It surely cannot be seriously urged that the legislature is stripped of its power to authorize a contract, and which at the time had reference to the present and the past only. A very large proportion

of the legislation in all the states is prompted by the decisions of the courts, and is intended to remedy some mischief pointed out or resulting from the utterances of the courts of the country': *City of New Orleans* v. *New Orleans Waterworks Co.*, 142 U. S. 79, 92 (35 L. Ed. 943, 12 Sup. Ct. Rep. 142). The present action comes within the principle of a second suit to recover real property based upon a newly acquired title. Such an action is never barred by an adverse judgment in respect to the same property, which was rendered before the new title was acquired: *Railroad Co.* v. *Smith*, 16 C. C. A. 336 (69 Fed. 579)."

This leaves the case in the position that the sole questions before the court for trial are, Were the services rendered pursuant to the contract with the insurance commissioner, and what was their reasonable value? The questions as to whether the county authorities encouraged their performance, or accepted the fruits of such labor, are not involved. The case must be considered in the same light as though the hiring had been originally authorized, except as to the compensation and that is left to be determined according to the usual methods.

The judgment is reversed, the demurrer overruled and the cause remanded to the Circuit Court with direction to proceed in a manner not inconsistent with this opinion.

REVERSED AND REMANDED. REHEARING DENIED.

BEAN, JOHNS and BURNETT, JJ., concur.