IN RE RECEIVERSHIP CITY-COMMERCIAL SAVINGS BANK OF MASON CITY.

F. M. ORR, Appellee, v. L. A. ANDREW, State Superintendent of Banking, Appellant.

No. 40216.

JUNE 23, 1930.

*R. F. Clough,* for appellant.

*Senneff, Bliss, Witwer & Senneff,* for appellee.

MORLING, C. J.—Robert L. Leach, while superintendent of banking, employed claimant, F. M. Orr, as examiner in charge of the Central Trust Company of Mason City, Iowa, at $250 per month, and $100 allowance for living expenses. Claimant

later was employed by Superintendent Leach to take concurrent charge of the United State Bank of Des Moines, and his compensation for the two institutions was agreed upon at $500 per month, and an allowance of $125 for living expenses. In February, 1925, claimant was relieved of the Des Moines bank, but retained in charge of the Central Trust Company at $250 per month and $100 per month for living expenses. He was given concurrent charge of the Cartersville Savings Bank, with no additional salary. In May, 1925, the City-Commercial Savings Bank closed. Claimant was placed in charge, and his salary fixed at $500 per month, and $125 living expenses, prorated between the City-Commercial Savings Bank and the Central Trust Company. On July 1, 1925, L. A. Andrew became superintendent of banking, in place of Mr. Leach. Claimant was paid the $500 and the $125 per month to August 1, 1925. In August, 1925, Mr. Andrew notified claimant that the salary of $500 per month could not be paid. A salary of $4,400 per year was thereupon agreed upon. Nothing was then said about the $125 per month for living expenses. Later, Mr. Andrew told claimant that he, Andrew, had learned that claimant was being paid $125 per month for living or personal expenses, but that there would be no allowance for personal expenses after August 1st. The reason given was that the executive council would not allow it. Claimant said that, if he was not paid the $125 a month, he would not stay. Plaintiff was concededly efficient. An effort was made among various state officers and others interested, to adjust the matter of additional allowance. The executive council apparently consented to the salary of $4,400, and it was paid. Neither the superintendent of banking nor the executive council agreed to pay the $125 per month, nor was it paid after August 1, 1925. Claimant continued as examiner in charge until January 1, 1927. On July 20, 1927, he filed claim in the receivership proceedings of the City-Commercial Savings Bank for the $125 per month. The claim, as amended, alleged "an oral agreement with L. A. Andrew by which he [claimant] was to be paid $4,400 per year as salary and $125 per month living expenses, $80 to be paid by the City-Commercial Savings Bank and $45 by the Central Trust Company, and that such salary and expenses should continue as long as

petitioner remained in charge.'' The alleged oral agreement is not proved.

The superintendent of banking is a state officer, appointed by the governor, with the approval of the Senate. Section 9130, 9131, Code, 1924. Section 9136, Code, 1924, provides:

"The superintendent of banking may appoint examiners, to hold office for a term of two years, but not to exceed one examiner for each one hundred banks, * * * and may also appoint a deputy superintendent of banking, * * * and may also appoint such clerks * * * as he may need * * *. Provided that, whenever the proper conduct of the affairs of the office demands, he may, with the approval of the executive council, appoint for a term not to exceed one year such additional bank examiners and employees as may be necessary * * *. Such additional examiners or employees shall be paid out of current or accumulated earnings of the banking department, their salaries to be not greater than those of other similar employees authorized by law. All such appointees shall be removable at the pleasure of the said superintendent.''

Section 9137 provides:

"The deputy superintendent of banking and all bank examiners shall receive a salary to be fixed by the superintendent of banking, which salaries shall be commensurate with the work done. In no case shall the salary of anyone exceed the sum of $3,800 per annum, except that the salaries of the deputy superintendent and of not more than three examiners may be increased by the executive council in an amount in each instance not in excess of $600 in any one year upon the request of the superintendent of banking and a showing by him of the need of such action, but under this provision no salary shall exceed a maximum of $4,800.''

By Section 9140:

"The superintendent of banking shall be the head of the banking department of Iowa and shall have general control, supervision, and direction of all banks and trust companies incorporated under the laws of Iowa, and shall be charged with the execution of the laws of this state relating to banks and banking. * * *''

Section 9144 reads:

"The superintendent of banking and examiners shall be entitled to actual and necessary expenses incurred in the examination of banks and trust companies, and the actual and necessary expenses within the state of special assistants and other employees who may be designated by the superintendent to aid in the official work of this department, shall be allowed."

Section 9145 provides:

"No payments of any kind shall be made by the treasurer of state to cover expenses and salaries of the banking department or any part thereof unless there shall be on hand in the office of the treasurer of state sufficient funds received as income from said department to pay the same, and such salaries and expenses shall be paid from such funds. The superintendent shall furnish to the auditor of state from time to time a list of the salaries as fixed by him or as authorized by the executive council, and all salaries shall be paid monthly * * *"

By Chapter 189, Laws of the Fortieth General Assembly, if the superintendent shall become satisfied that a bank is in an insolvent or unsafe condition, he may "appoint an additional bank examiner to assist him in the duty of liquidation and distribution, * * * and * * * may apply to the district court * * * for the appointment of said superintendent as receiver for such bank, and its affairs shall thereafter be under the direction of the court, and the assets thereof after the payment of the expenses of liquidation and distribution shall be ratably distributed * * * The attorney-general of the state, or such assistants as may be appointed by the court, shall represent the superintendent of banks in all proceedings provided for hereunder. * * * The superintendent of banking henceforth shall be the sole and only receiver or liquidating officer * * * and he shall serve without compensation * * * he shall be allowed clerical and other expenses necessary in the conduct of the receivership. All expenses of supervision and liquidation shall be fixed by him, subject to approval by the court or a judge thereof, and shall upon his certificate be paid out of the funds of such bank in his hands."

In *Leach v. Exchange State Bank of Stuart*, 200 Iowa 185,

Chapter 189, Laws of the Fortieth General Assembly, was construed to place the administration of the banking laws, with an exception not here material, in the hands of the superintendent of banking. It was held that, under the law before this amendment, the authority of the superintendent of banking, so far as dissolution was concerned, unless he applied for the appointment of a receiver, was much short of that conferred by the Federal statutes; that the only respect in which the state statutes failed to make such separate and complete provision as in the case of national banks "was in regard to the involuntary dissolution of banks and the distribution of their assets."

"The act in question gives to the superintendent of banking, independently of the appointment of a receiver, the power to liquidate an insolvent bank and distribute its assets. * * * it gives him authority to appoint an additional bank examiner to assist *him* in the duty of *liquidation* and *distribution.* * * * he *may* apply to the court for the appointment of himself as receiver for the bank and that its *affairs* shall *thereafter* be under the direction of the court. * * * It is the superintendent of banking, and not the receiver, who is made the only liquidating officer. * * * these provisions * * * do deprive the court of the power to deny to the superintendent of banking the right expressly conferred upon him to act as receiver, if one is needed, and, in any event, to liquidate the bank and distribute its assets * * *."

In the case before us, we assume that the superintendent of banking was appointed receiver in the usual method. He was so appointed by virtue of his existing official position and the mandate of the statute. In cases such as that before us, the superintendent of banking is the liquidating officer of the bank. A chancery receiver may, under peculiar circumstances, be appointed. *Harris Estate v. West Grove Sav. Bank,* 207 Iowa 41. The present, however, is not a chancery receivership. In case of liquidation by the superintendent of banking under the direction of the court, pursuant to statute, the court does not take possession of the assets and wind up the business. The superintendent takes charge and possession, and the bank affairs are thereafter under the direction of the court. The duty and responsibility for the winding up and the administration of the

affairs of the insolvent bank are on the superintendent of banking. We do not here determine the authority of the executive council in fixing salaries in such case. Whether or not the statutes which have been quoted, governing the salaries of bank examiners and employees, control in case of liquidation, they manifest a legislative policy of economy, of limitation, and of centralization and unification of authority and policy in all state bank matters throughout the state. The superintendent of banking, notwithstanding his appointment as receiver of a particular bank, pursuant to statute, remains a state officer. The additional bank examiner is appointed by him, and is his assistant. Though the superintendent is appointed receiver, and liquidates under the direction of the court, he serves "without compensation other than his stated compensation as superintendent of banking, * * * All expenses of supervision and liquidation shall be fixed by him, subject to approval by the court * * *." The provision for approval of expenditures is in the interest of economy, a check on the power of the superintendent of banking,—not a grant of original authority to the court. That expenses, as fixed by the superintendent of banking, are subject to the approval of the court, does not imply that the court has initial or original or primary power to employ an assistant bank examiner, or to fix his compensation. The initial power of employing and fixing expense is in the superintendent of banking. The court has merely the power of approving, not of originating. *State ex rel. Kuhlemeier v. Rhein,* 149 Iowa 76; *Simpson v. City of Marlborough,* 236 Mass. 210 (127 N. E. 887).

The superintendent did employ the claimant, and did agree to pay him $4,400 salary. The superintendent never agreed to pay any more. The court might approve or disapprove of the allowance or contract, but is given no authority to allow or contract for more for services rendered than the superintendent has agreed to pay for them. Claimant said that he would not stay if he was not paid the additional $125 per month, but he did stay. His services were performed under the agreement to pay him a salary of $4,400. Efforts toward making adjustment of his demand for more, though claimant and the officials involved hoped or expected that such efforts would be successful, did not enlarge the promise from one to pay $4,400 to one to

pay $1,500 additional, or $5,900. Claimant's demand was for an allowance of $125 per month for his living or personal expenses. Such an allowance would be merely an enlargement of compensation. If such expense could be said to be one incurred in the performance of official duty, the right to it would have to be found in the Constitution, or a statute, or an authorized agreement. *Mackenzie v. Douglas County*, 81 Ore. 442 (159 Pac. 625). The allowance of the claim, therefore, resting upon no foundation in law, and on no agreement, was merely gratuitous, and outside of the province of the court.—*Reversed.*

EVANS, STEVENS, FAVILLE, DE GRAFF, KINDIG, and GRIMM, JJ., concur.