Argued January 16; reargued April 16; reversed April 23, 1940

# SCHOOL DISTRICT NO. 1, MULTNOMAH COUNTY *v.* MULTNOMAH COUNTY

(101 P. (2d) 408)

In Banc.

*Grant T. Anderson,* of Portland (Ralph H. King of Portland, on the brief), for appellant.

*Frank S. Sever,* Deputy District Attorney, of Portland (James R. Bain, District Attorney, of Portland, on the brief), for respondent.

KELLY, J. The deed in suit was executed on November 18, 1935, pursuant to authority granted by section 1 of chapter 138, Oregon Laws 1935. The pertinent provisions of section 1 are:

"The state, county, and each other municipal corporation or quasi municipal corporation or department of public docks of a municipal corporation within the state of Oregon hereby is granted express power to relinquish the title to any of its property not needed for public use to the United States government and/or any other governmental body within the state of Ore-

gon, providing such property shall be used and continue to be used, for a public purpose by the United States government, or such other governmental body in the state of Oregon.''

The stipulated value of the property conveyed, exclusive of improvements, at the date of the conveyance was $68,750. For over 30 years, prior to said date, namely, November 18, 1935, plaintiff, school district, was the owner and in possession of the real property in suit. In the record of this case, it is frequently referred to as the Atkinson school site. For several years it has been and is being used for vocational school purposes.

Immediately east of the premises in suit and across Northwest Eleventh Avenue is block 69 owned by Multnomah County consisting of a tract of land 200 feet square. For many years the county has maintained thereon an armory for use by the Oregon National Guard.

Early in 1935 there seemed to be need for a new and enlarged armory in Multnomah county. At that time, the county's officers in cooperation with National Guard officials submitted a project to the Works Progress Administration of the United States seeking a grant of federal funds in the amount of approximately $1,000,000 with which to construct a new and enlarged armory extending over the premises in suit, being block 80, and the armory site being block 69 in Couch's Addition to Portland, and the portion of Northwest Eleventh Avenue intervening between said blocks 80 and 69, it being believed that said portion of said Eleventh Avenue could be vacated for such purpose.

Sometime prior to November 13, 1935, this project was approved by presidential order and a warrant was

drawn thereunder ready to be signed by the Director General. The director advised those interested that, before he would countersign the warrant, Multnomah County must become and be the owner in fee of the proposed site.

On the afternoon of November 13, 1935, a special meeting of the school district's directors was held, which meeting was attended by the entire membership of the school district's board of directors and of the county board of commissioners as well as by the highest ranking officials of the Oregon National Guard, a committee of local businessmen headed by Mr. E. B. MacNaughton, a delegation from the Portland Chamber of Commerce, representatives of the building trades unions, and other interested citizens.

At this meeting, the status of the W. P. A. project, as above stated, was explained to the school district's board of directors and it was represented that the transfer of the Atkinson property was practically the only barrier in the way of the project; that if the school district would transfer said property to the county, construction would begin almost immediately and would provide employment for about one thousand men for a period from nine months to one year.

At first, the county offered to exchange certain land of nominal value lying in Mock's Bottom in the city of Portland, which had been acquired through tax delinquency. This offer was rejected.

Then, those present urged the school district's directors to transfer said block 80 to the county for the purpose of erecting thereon a new armory building solely upon public and patriotic grounds.

Later on said November 13, 1935, a regular meeting of the board of directors of plaintiff school district was held and a resolution adopted as follows:

"Whereas School District No. 1 Multnomah County, Oregon, is possessed of certain real property now occupied by the Atkinson School, which real property is Block 80 Couch's Addition to the City of Portland, and which property by reason of changing conditions in the City of Portland is no longer required or desirable for school use or for the uses of this district; and

Whereas Multnomah County has requested the transfer of said property to said County to be used as part of a site for the construction of a new armory in cooperation with the Works Progress Administration of the United States; and

Whereas such use is a necessary public purpose,

Now, Therefore, Be it resolved by the Board of Directors of School District No. 1, Multnomah County, Oregon, that Block 80, Couch's Addition to the City of Portland, be transferred and title relinquished by deed of appropriate conveyance to Multnomah County, a political subdivision of the State of Oregon, for such public use."

On November 18, 1935, pursuant to said resolution, the school district executed the deed in suit conveying said property to Multnomah County. Simultaneously with the execution of said deed, an agreement was entered into between the school district and the county where it was provided that the school district should receive the salvage from the school building upon said block 80.

Thereafter, the Director General imposed additional restrictions upon the allotment of W. P. A. funds previously made; and required, as a further condition to his countersigning the warrant hereinbefore mentioned, a guaranty that the work would be performed under a force account, using relief labor, and that the construc-

tion would be completed by June 30, 1936. It was impossible for the county and the National Guard to meet these conditions. Thereafter, the W. P. A. rules were amended by congress to require that the entire cost of the project should not exceed $1,100 per man year. The project submitted, required $2,700 per man year and the county has never been able to reduce that sum within the defined limits.

When it became impossible to construct a new armory building, the county, under date of May 12, 1936, requested the school district to vacate the Atkinson school building in order that it might be remodeled for use by the National Guard. Under date of August 21, 1936, the county renewed this request and tendered deeds to the Mock's Bottom property which had been previously offered in trade.

On August 24, 1936, the board of directors of the school district refused to consent to the remodeling of the Atkinson school or the changing of the said property and at the same time refused to accept said deeds. The school district notified the county accordingly and returned the deeds. A quitclaim deed from the city of Portland was likewise returned.

On August 25, 1937, the school district made a written demand upon the county for a reconveyance of the Atkinson school property. Under date of September 28, 1937, the county refused the school district's demand and assigned as its reason that the district attorney was of the opinion that the conveyance was made under an agreement to accept lands in Mock's Bottom heretofore referred to as part consideration and that there was no misrepresentation inducing the execution of such conveyance; and that in the absence

of a defeasance clause the breach of a condition subsequent does not afford the right to rescind.

On February 15, 1938, the present suit was begun.

Two grounds are assigned upon which plaintiff contends the deed in suit should be set aside, namely: That the purpose and consideration therefor has failed; and that said deed was executed under a mutual mistake of fact.

On January 16, 1940, this case was being argued for the first time in this court; and it was then suggested that the parties could stipulate that unless construction of a new armory upon the premises mentioned should be commenced on or before July 1, 1941, the county would convey said block 80 to the school district. The further agreement of the case was thereupon postponed. Thereafter, it developed that such a stipulation could not be made for the reason that the county would first need to know what action the legislature would take in reference to providing funds for such construction, and then the county would be required to provide in its budget for such funds as the county would be required to supply. The county, therefore, took the position that it would not be justified in fixing any date earlier than January 1, 1943, as that on or before which actual construction should begin.

On April 16, 1940, reargument was heard and certain facts were conceded. Among them is the fact that at all times since the execution of the deed in suit the county has been without means sufficient to construct a new armory upon the premises mentioned. Another fact, which is conceded, is that the county will continue to be without the necessary funds for such purpose at least until the effective date of a further legislative appropriation arrives. This means

that more than five years will have elapsed before the condition upon which the deed in suit was executed may in any event be met.

The writer digresses here to say that no one imputes any improper motives to any of those who participated in securing the execution of the deed in suit. The officials of Multnomah county were not actuated by any other motive than to serve the best interests of their constituents and the Board of Directors of plaintiff school district had no other object than to act in accord with the best interests of the public.

Defendant county argues that the agreement to construct a new armory was merely a condition subsequent, and there being no provision in the deed that a failure to perform such condition should operate as a forfeiture of the granted estate, no ground is shown for setting aside the conveyance.

It is argued by the county that the express intention to construct an armory upon the site was merely an executory agreement and the failure to perform it does not give cause for cancellation of the deed.

It is also contended by the county that the record does not disclose any mistake within the meaning of the rule justifying rescission or cancellation of a contract on the ground of mutual mistake. The county calls attention to the general rule that a mistake which will justify the rescission or cancellation of a contract must be as to a material existing fact.

We think that defendant's argument overlooks the source of plaintiff's authority to make the deed in suit and of defendant's right to receive title from plaintiff to the property thereby conveyed.

The only authority supporting the transaction is the statute above mentioned, namely, section 1 of chapter 138, Oregon Laws 1935.

■ The provisions of this statute are as effective and controlling as if they were copied into and expressly made a part of the deed in question.

It, therefore, is not a question whether the consideration has failed, whether a condition subsequent has been broken or whether a mutual mistake has been made; but it is a question whether the statute has been obeyed.

■ The statute plainly requires the transferred property to be used and continue to be used by the grantee for a public purpose. It is only in compliance with that provision of the statute that the school district's relinquishment of title to the property in suit is valid.

The record discloses that Multnomah County has not at any time used said property for a public purpose. As stated, it is conceded that the county will not and cannot make a public use thereof before January 1, 1943, or, in other words, for more than seven years subsequent to the execution of the deed in question.

■ We think that more than a reasonable time has elapsed within which the county should have complied with the terms of the statute and that, because there has been no such compliance, plaintiff school district is entitled to the relief sought herein.

■ While school districts are bodies corporate, and, as such are authorized to hold and dispose of property in their name and corporate capacity, *Vestal, et al. v. Pickering, et al.*, 125 Or. 553, 267 P. 821; *Splonskofsky v. Minto, Sheriff*, 62 Or. 560, 126 P. 15, it must be borne in mind that a school district is purely a creation of the legislature, either by express law, or by a general law under which it is formed, and its powers and the method of their exercise are all defined by legislative act.

■ So too, as counties are but subdivisions of the state, created by the legislature for political and civil purposes as agencies of the state government, they are entirely subject to legislative control except so far as restricted by the constitution of the state. 15 C. J. Subject, Counties, p. 420, section 53, and cases there cited under note 9.

This case is to be distinguished from those cases where a grantor seeks cancellation of a conveyance to a county on the ground that the county is without authority to accept the property conveyed. Such unauthorized action by a county may be asserted only by the state.

In the case at bar, we have but to determine the effect of the action taken by the two agencies of the state, that is to say, the school district and the county. Both of these municipalities acted within the terms of the statute; and their authority, or lack of it, so to act is not at issue. The effect of the inability and failure of the county for the time stated to comply with the terms of the statute requiring public use and continued public use of the property in suit, in our opinion, was to invalidate the attempted relinquishment by the school district of title to the property in suit; but we do not hold that the county was without authority to receive such relinquishment in accordance with the statute by making public use of the property. This is not a case where public use has been made by the grantee of the property involved and later such grantee seeks to change the character of its use.

The proposition made by the county on May 12, 1936, as above stated, that the building on block 80 be remodeled for use by the National Guard was one which neither party contemplated when the deed in

suit was executed, and, at best, was only an unperformed offer on the part of the county.

■ The record does not support the contention made by the county on September 28, 1937, that the relinquishment of the title to said property by the school district was made under an agreement to exchange said property for property in Mock's Bottom.

It follows that the decree of the circuit court is reversed; the deed in suit set aside, vacated, cancelled and held for naught. It is further ordered that neither party hereto recover costs or disbursements herein.

BEAN and BAILEY, JJ., not sitting.