Argued June 12, modified July 3, 1957

GLEASON ET AL *v.* THORNTON

313 P. 2d 776

*Lloyd G. Hammel,* Assistant Attorney General, of Salem, argued the cause for appellant. With him on the brief was Robert Y. Thornton, Attorney General, of Salem.

*F. Leo Smith* and *William M. Keller,* of Portland, argued the cause and filed a brief for respondents.

Before PERRY, Chief Justice, and ROSSMAN, LUSK, WARNER, McALLISTER and KESTER, Justices.

KESTER, J.

This is a declaratory judgment proceeding to determine the duty to pay and the manner of payment of the expenses and attorneys' fees incurred by the Attorney General in the current vice investigations and prosecutions in Multnomah county.

The trial court decreed that the salaries and personal expenses of the Attorney General and his assistants (whether full or part-time) are to be paid by the State of Oregon, and all other necessary and reasonable costs, fees and expenses shall be paid by Multnomah county; and as to the latter, that claims shall be prepared in accordance with the auditing requirements of ORS 210.170 and 210.200, and that for subsequent fiscal years the parties shall comply with the local budget laws (ORS 294.305 to 294.415). From this decree the Attorney General appeals.

It is agreed that the Attorney General's authority in this matter stems from executive orders dated April 25 and May 24, 1956, issued by Honorable Elmo Smith, then Governor of the State of Oregon, and confirmed on February 1, 1957 by his successor, Honorable

Robert D. Holmes, who continued both prior orders in full force and effect.

The order of April 25, 1956 provided:

"Now, Therefore, pursuant to the provisions of ORS 180.070 and 180.080, I hereby direct you to attend in person or by your assistant or assistants the present or any succeeding term of the Circuit Court of the State of Oregon, and appear before the Grand Jury of said county at the present or any succeeding term thereof and take charge of, manage and conduct, in accordance with the above provisions, the investigation and presentation to the grand jury of the facts, transactions, circumstances and acts concerning or connected with the violation in Multnomah County of laws relating to gambling, prostitution, perjury, bribery, extortion, intoxicating liquors, narcotics, and other allied vicious or corrupt practice, by persons, organizations, or combinations thereof, and to prosecute before said Circuit Court, at the present or any succeeding term thereof, all persons who may be duly charged with crime pursuant to such investigation and presentation by said grand jury, to the final determination thereof and to the full extent of the law in such cases made and provided."

The order of May 24, 1956 provided:

"Pursuant to the provisions of ORS 180.070 and 180.080 I hereby direct that you attend in person, or by your assistant or assistants, the present or any succeeding term or terms of the District and Circuit Courts of the State of Oregon for Multnomah County, and take charge of, manage and conduct in accordance with the aforementioned provisions, the investigation, institution and prosecution of all charges and proceedings in either of those courts concerning or connected with the violation in Multnomah county of laws relating to gambling, prostitution, perjury, bribery, extortion, intoxicating liquors, narcotics, wiretapping, and other

allied vicious or corrupt practices by persons, organizations, or combinations thereof, and further that you take sole and exclusive charge of the present and any succeeding grand juries of said county, subject to the supervision of the Circuit Court, act as legal advisor of said grand juries, subpena and examine all witnesses who appear before said grand jury and present thereto all matters of original investigation, and the cases of all persons held to answer charges of crime in said county."

Pursuant to those directives the Attorney General took charge of investigations, grand jury presentations and prosecutions in Multnomah county, and for that purpose employed additional help. The Attorney General commenced to submit matters to the Grand Jury on or about June 4, 1956, and the first indictments were returned on July 31, 1956. As it finally developed, his assistants were of three classes: (1) His regular full-time assistants, whose salaries are paid out of the appropriations for the Attorney General's office; (2) other Assistant Attorneys General, who were normally assigned to other state departments and whose salaries are normally paid from funds appropriated to those departments, who were borrowed from those departments for this purpose; and (3) attorneys in private practice (mostly former district attorneys), who were hired on a part-time basis, and who were appointed as Special Assistant Attorneys General for this purpose.

It will be noted that the Governor's orders were based upon both ORS 180.070 and 180.080, which sections are set forth in full in the margin.[1] The basic question concerns the meaning of subsection (3) of

[1] ORS 180.070: "(1) The Attorney General may, when directed to do so by the Governor, take full charge of any investigation or prosecution of violation of law in which the circuit court has jurisdiction.

ORS 180.070, which provides that "all costs, fees and other expense shall be paid by the county in which the investigation takes place, to the same extent as if conducted by the district attorney of the county."

The county concedes its liability for all expenses other than for attorneys, but contends that the fees or salaries and personal expenses of attorneys are not included in the above-quoted provision. The county further contends that as to those expenses for which it is liable, the local budget laws apply, and also that all claims must be submitted for audit in the same manner as other claims against the county.

The Attorney General apparently concedes that his own salary and the salaries of his regular, full-time assistants are not chargeable to the county, but contends that his and their personal expenses must be paid by the county; and in addition, he claims that the county must pay the fees or salaries and personal expenses of those assistants borrowed from other state

"(2) When acting under this section, the Attorney General shall have all the powers of a district attorney, including the power to issue or cause to be issued subpenas or other process. The Attorney General may, when he considers the public interest requires, with or without the concurrence of the district attorney, direct the county grand jury to convene for the investigation and consideration of such matters of a criminal nature as he desires to submit to it. He may take full charge of the presentation of such matters to the grand jury, issue subpenas, prepare indictments, and do all other things incident thereto to the same extent as the district attorney may do.

"(3) All costs, fees and other expense shall be paid by the county in which the investigation takes place, to the same extent as if conducted by the district attorney of that county.

"(4) The power conferred by this section, ORS 180.060, 180.220 or 180.240 does not deprive the district attorneys of any of their authority, or relieve them from any of their duties to prosecute criminal violations of law and advise the officers of the counties composing their districts."

ORS 180.080: "When directed by the Governor, the Attorney General shall attend in person, or by one of his assistants, any term of any court, or appear before the grand jury in any county, for the purpose of managing and conducting in such court, or before such jury, the criminal action or proceeding specified in the requirement. The Attorney General, or his assistant so attending, shall exercise all the powers and perform all the duties in respect of the action or proceeding which the district attorney would otherwise be authorized to exercise or perform. The district attorney shall only exercise such powers and perform such duties in the action or proceeding as are required of him by the Attorney General, or his assistant so attending."

departments and hired from private practice. Although he contends that the local budget laws do not apply, as a matter of cooperation he did submit an estimate of expenditures for the balance of the fiscal year 1956-57, and his budget was approved by the county except for the attorneys' fees and expenses. He also agreed to submit all claims in accordance with the auditing requirements of ORS 210.170 and 210.200.

In his answer to the complaint, the Attorney General states his position as follows:

"1. That the defendant Attorney General is not required to submit to the plaintiff County Commissioners an estimate of the probable expenditures that will be incurred in the investigation and prosecutions carried on in Multnomah County under the directive of Governor Elmo Smith pursuant to ORS 180.070 and 180.080; and that the provisions of ORS 294.305 to 294.415, known as the Local Budget Law, have no application thereto;

"2. That the plaintiffs have no authority to reject or refuse payment of any bills that have been or will be submitted by defendant Attorney General unless the particular bill is (a) not lawfully chargeable to the costs of the investigation and prosecution; (b) not properly itemized in sufficent detail to satisfy standard and usual auditing requirements; or (c) the charge is clearly unreasonable or excessive;".

Thus the two questions presented are: (1) Does ORS 180.070 (3) require the county to pay the fees or salaries of attorneys and their expenses, and (2) do the local budget laws apply to the amounts properly chargeable to the county? The Attorney General suggests a third question; namely, whether the rates of pay established for Special Assistant Attorneys General are reasonable and necessary. However, the trial court did not decide that question, as he required the

state to pay the attorneys in any event, and we do not regard that as an issue on this appeal.

1. Attorneys' fees and expenses.

■ At the outset, we observe that there is no challenge to the authority of the Attorney General to employ special assistants for this purpose. ORS 180.070 was enacted as a part of Oregon Laws 1947, ch 556, which established the state department of justice; and the same act contained the provision which is now ORS 180.140 (1) that "The Attorney General shall appoint the other assistants he deems necessary to transact the business of the office, each to serve at the pleasure of the Attorney General and perform such duties as he may designate and for whose acts he shall be responsible. Each assistant shall have full authority under the direction of the Attorney General to perform any duty required by law to be performed by the Attorney General." Hence, when ORS 180.070 provides that "the attorney general may * * * take full charge of any investigation * * *" it follows that he may do so through such assistants as he shall deem necessary. And ORS 180.080 (which was Oregon Laws 1915, ch 196) specifically provides that "the Attorney General shall attend in person, or by one of his assistants."

The 1947 Act also requires that the salaries of such assistants be paid in the first instance by the state: "Each assistant shall receive the salary fixed by the Attorney General, payable as other state salaries are paid. Each assistant so appointed shall devote his full time to the business of the state, unless his employment on a part-time basis is otherwise fixed by the Attorney General." ORS 180.140 (4). Hence, as to salaries, the question is not between the special assistant and the state (which hires him and is obligated to pay

him), but between the state and the county, as to whether the county must reimburse the state for salaries thus paid. *Cf Wemme v. First Church of Christ*, 110 Or 179, 214-224, 219 P 618, 223 P 250; *State ex rel v. Mott*, 163 Or 631, 639-640, 97 P2d 950.

We understand that, as a result of this controversy, some of the fees and expenses incurred remained unpaid for a considerable period of time. However, while this litigation has been pending, the 1957 legislature enacted House Bill 800 (Oregon Laws 1957, ch 340) making a supplemental appropriation to the Department of Justice for the biennial period beginning July 1, 1955 in the amount of $27,612.58 "for the payment of expenses necessary to the investigation, prosecution, indictment and other incidental expenses involving law violations in Multnomah county * * *" The act contained an emergency clause so as to take effect upon its passage, and also the following provision:

"Section 2. The appropriation of any funds under section 1 of this Act, to the Department of Justice for the payment of costs, fees, attorney fees, salaries or other expenses heretofore incurred or to be incurred under ORS 180.070 and 180.080 and the payment of any such costs, fees, attorney fees, salaries or other expenses by the State of Oregon shall not be construed to prejudice the state in the recovery of such disbursements from any county. All such disbursements so recovered shall be deposited with the State Treasurer to the credit of the General Fund."

We assume that, as a result of this enactment, all disputed fees and expenses have been or will be paid up to July 1, 1957, but without prejudice to the decision of this case. We are not advised as to what, if any, provision may have been made for this investigation after July 1, 1957, either in the Attorney General's

state budget for the 1957-59 biennium, or in the Multnomah county budget for the fiscal year beginning July 1, 1957.

On its face the provision that "all costs, fees and other expense shall be paid by the county" is broad enough to include the fees or salaries and expenses of attorneys engaged in the investigation. However, the provision must be read in the light of the remainder of the act, as attorneys' fees may or may not be included in such language, depending on the overall purpose of the legislation. See *In Re Mason,* (Mo App) 203 SW2d 750, 756-7; *Burrage v. Bristol County,* 210 Mass 299, 96 NE 719; *Wiggin v. Nat. Fire Ins. Co.,* 271 Mass 34, 170 NE 795.

■ Although cases dealing with recovery of attorneys' fees from an adverse party are of course subject to considerations not involved here, it is generally held in such cases that the terms "costs" or "expenses," as used in a statute, do not include attorneys' fees. *Garrett v. Hunt,* 117 Or 673, 676, 244 P 82, 245 P 321; 14 Am Jur 38, Costs § 63; Annotation: Ann. Cas. 1914 c, 1300.

As used in ORS 20.010, the term "costs" refers to a nominal indemnity for attorney fees, the amount of which is specifically set forth in ORS 20.070. The allowance for disbursements provided in ORS 20.020 uses "fees" only in connection with "fees of officers and witnesses."

Where the salary of a special prosecutor is to be paid directly by the county, the legislature has recognized the necessity for special provision. Thus the prohibition act enacted as Oregon Laws 1915, ch 141, provided that whenever the provisions of the act were not being enforced in a county, the governor should ap-

point special prosecutors, to have the same power and authority as the regular district attorney. The act provided (in section 25) that "all expenses incurred and disbursements made * * * shall be paid by the county court;" and it also provided that "the salary or other compensation [of the special prosecutor] shall be paid by the county court of the county to which said prosecutor may be assigned * * *" It is perhaps noteworthy that this was the same legislature that passed what is now ORS 180.080.

By the same token (or perhaps *a fortiori*), when the salaries of the assistants to the Attorney General are paid in the first instance by the state, we believe that if the legislature had intended the counties to reimburse the state for those salaries, the statute would have expressly so provided. That such statute should be strictly construed is indicated by *Mackenzie v. Douglas County,* 81 Or 442, 159 P 625, 159 P 1033; and *Irwin v. Klamath County,* 93 Or 538, 183 P 780.

In *Chergotis v. State,* 172 Misc 272, 15 NYS2d 94, affmd 259 App Div 369, 19 NYS2d 626, relied on by the Attorney General, the statute expressly provided that "in all such cases expenses incurred by the attorney-general, including the salary or other compensation of all deputies employed, shall be a county charge." Thus the case really supports the plaintiffs' argument instead of the defendant's.

■ We hold therefore that the fees or salaries of the Assistant Attorneys General, whether regular or special, and whether full or part-time, are to be paid by the state, and the county is not required to reimburse the state for such expenditures. Both parties have treated the personal expenses of such attorneys (hotel, meals, traveling, etc.) as in the same category as fees

or salaries, and our holding will be the same as to those items.

2. The Local Budget Laws

■ This phase of the case requires a difficult balancing between the need for sound financial administration of the county and the need for the Attorney General to have a relatively free hand in situations of this kind. Obviously the county is at a disadvantage in levying taxes and expending public funds if it is required to pay the expenses of a large scale investigation such as this without prior estimates and budgeting. But it is equally obvious that the county officials could frustrate the investigation if they have a veto power on proposed expenditures.

We do not mean to imply that the county officials would do so in this case; and the county commissioners here seem to have cooperated fully, except as to the items which they contested in good faith (and rightly, as we hold). But the very foundation for such an investigation assumes a breakdown in law enforcement at the county level, and it is not inconceivable that persons holding the county purse strings might themselves be subject to such an investigation. Therefore as a matter of principle, and not suggesting that such a situation exists in this particular case, we do not think the legislature intended the expenses of such an investigation to be subject to the local budget laws.

Indeed, the uncertainties attending such an investigation might in any event make it impracticable to estimate its expenses with any degree of accuracy. There is of course no way of knowing in advance when such an investigation may be ordered; and even after the investigation has been launched, there is no way of predicting where it may lead, or what new ramifications may unfold requiring further investigation.

In other situations it has been held that the state may impose certain obligations on the counties and may require the counties to levy taxes for particular purposes, nothwithstanding the provisions of the local budget law.

Thus in *State v. Stannard,* 84 Or 450, 475, 165 P 566, 571, mandamus was used to compel the officials of Curry county to call and hold a special election, as required by the 1917 legislature, notwithstanding that the county had not budgeted funds for that purpose. It was held that the restrictions of the local budget law (of 1913) were impliedly removed by the later act requiring the election, and the "involuntary" indebtedness incurred in performing a duty imposed by law had priority over the county's "voluntary" plans for expending its funds.

In *Mackenzie v. Douglas County,* 91 Or 375, 178 P 350, it was held that the legislature could validly impose upon the counties the obligation to pay for an audit of the county books contracted for by the State Insurance Commissioner (it having been held in *Mackenzie v. Douglas County,* 81 Or 442, 159 P 625, 1033, that under the former statute the commissioner had no power to employ outside auditors).

In *State v. Keelen,* 103 Or 172, 195, 203 P 306, 204 P 162, 164, it was held that the state could impose on the county the duty to pay costs and disbursements on appeal to a successful defendant in a criminal case.

*State v. North Bend,* 171 Or 329, 344-6, 137 P3d 607, approved the Stannard case, supra, with respect to the expense of municipal consolidation.

In *State v. Malheur County,* 185 Or 392, 203 P2d 307, mandamus was used to compel the county court of Malheur county to budget and set aside its contribu-

tion to the state welfare program. In that opinion, this court said:

"*  *  *  In Mackenzie v. Douglas County, 91 Or. 375, 178 P. 350, this court said:

"'*  *  *  it may not be inappropriate to consider the relation of a county to the state. We think the decisions may be said to be uniform that a county is not an independent governmental entity—is not even a corporation in the same sense that municipalities are corporations. It is a quasi corporation created by legislative fiat for governmental purposes and subject to the legislative will in all matters not prohibited by some constitutional restriction.'

"To the same effect see Miller v. Henry, 62 Or. 4, 124 P. 197; City of Pendleton v. Umatilla County, 117 Or. 140, 241 P. 979; School District No. 1 v. Multnomah County, 164 Or. 336, 101 P. (2d) 408. A county is merely a political agent of the state created by law for governmental purposes, invested with legislative powers and charged with the performance of duties for the state. Yamhill County v. Foster, 53 Or. 124, 99 P. 286; Schubel v. Olcott, 60 Or. 503, 120 P. 375. Again it is said:

"'*  *  *  Where a state by enactment, in furtherance of its governmental purposes, imposes an obligation upon a county not in conflict with the Constitution of the state, that obligation becomes one which the county must fairly meet.' Mackenzie v. Douglas County, 81 Or. 442, 159 P 1033."

We think therefore, as in the Stannard case, that the legislature in authorizing this type of investigation, imposed on the county an involuntary liability for the expense thereof (aside from the fees or salaries and personal expenses of the attorneys) which takes precedence over budgeted items; and to that extent the

restrictions of the local budget laws were impliedly removed.

We note that ORS 294.330 provides for an estimate for emergency or unforeseen expenditures; and ORS 294.115 provides a procedure for making a supplemental budget within the original levy. It was under the latter section that the Attorney General submitted his budget in this case. We have no doubt that the Attorney General will continue to cooperate with the county, so far as possible, to enable the county to provide the necessary funds without impairing other essential county services.

The decree of the lower court is affirmed insofar as it provides that the state of Oregon shall pay all salaries and personal expenses of the Attorney General and his assistants, whether full or part-time, and Multnomah county shall pay all other necessary and reasonable costs, fees and expenses of the investigation. Insofar as it provides that the parties shall comply with the Local Budget Laws for subsequent fiscal years, the decree is reversed. No costs to either party.