Argued July 16, affirmed September 23, 1919.

## IRWIN *v.* KLAMATH COUNTY.

(183 Pac. 780.)

Counties—District Attorney Unauthorized to Contract for Services in Procuring Evidence,

1. Laws of 1915, Chapter 141, Section 24, requiring district attorneys to prosecute diligently persons violating the act prohibiting the sale of intoxicating liquors, and Section 25, providing for payment by the County Court of expenses and disbursements incurred therein by and under the direction of the district attorney, do not authorize a district attorney as the county's agent to make a specific contract for services in procuring evidence specifying the amount the county shall pay, in the absence of statutory provision therefor, in view of Section 937, L. O. L., placing the contract power with the County Court. (Per JOHNS and MCBRIDE, JJ.)

Counties—District Attorney Unauthorized to Employ Agents to Ferret Out Violations of Liquor Law.

2. The words "expenses incurred and disbursements made by and under the direction of district attorney," in Laws of 1915, Chapter 141, Section 25, have reference to ordinary expenses, including amounts actually disbursed, or for which he made himself personally liable, such as hotel bills, railroad fare, etc., incurred while prosecuting violators of prohibition law, but does not include employment of agents by the month to travel over the county to ferret out possible offenders and gather evidence. (Per BENNETT, J.)

BEAN, J., dissenting.

From Klamath: FRANK M. CALKINS, Judge.

Department 2.

The plaintiff alleges that at all times hereinafter stated he was the duly elected, qualified and acting district attorney in and for Klamath County and that as such district attorney and as agent of the defendant, under the provisions of Chapter 141 of Laws of 1915, he employed one Wynn "to do and perform labor for the defendant in and about procuring evidence in the matter of the illegal sale of intoxicating liquors in Klamath County, Oregon, and obtaining and attempting to obtain evidence in prosecuting violators" of the prohibition law, at an agreed and stipulated price of $85 per month from January 19, 1916, to February 19, 1916; and from February 19, 1916, to May 19, 1916, "at the agreed and stipulated price at the rate of $100 per month."

There are four causes of action, all of a like nature and founded upon similar allegations, making a total of $911.10, assigned to the plaintiff, who was then such district attorney, and for which he prays judgment against the county. It appears from the complaint that the plaintiff as district attorney audited and approved the claims against the county for such alleged services and that the claims were presented to and disallowed by the defendant.

The answer admits that the plaintiff was district attorney at the time alleged, but denies "that John Irwin was the agent of the defendant under the provisions of Chapter 141 of the General Laws of the State of Oregon, for the year 1915, or under the provisions of any other law." It further denies that he employed Charles D. Wynn or any other person for and on behalf of the defendant, denies every allegation in paragraph 2 of the complaint, "excepting defendant admits

that the claim mentioned was filed and that the defendant disallowed the same," and denies each and every other allegation of the complaint. Similar denials are made to each cause of action.

As a further and separate answer, the defendant alleges that at such times Marion Hanks was the duly elected and qualified county judge; that F. H. McCornack and John Hagelstein were commissioners of such county; that as such officers they had "the general care and management of the county property, funds and business of Klamath County, Oregon"; that C. C. Low was the sheriff and that John Irwin, the plaintiff, was the district attorney; that the defendant never employed Wynn, Otis, Moore or Bardin, the assignors of the plaintiff, or either of them, "to do or perform any labor for the defendant in and about procuring evidence in the matter of the sale of intoxicating liquors or in obtaining or attempting to obtain evidence in prosecuting violators of the laws of the State of Oregon"; that the plaintiff was never authorized to employ them, and that neither of them ever rendered any service to Klamath County, as alleged or otherwise. As an affirmative defense it is alleged that the officers of Klamath County were at any and all times ready and willing to aid and assist the district attorney in obtaining evidence and prosecuting violators of the prohibition law, and the employment of such individuals for this purpose was unnecessary and unauthorized.

After his motion to strike was overruled, the plaintiff filed a general demurrer to the further and separate answer, which was overruled, and the defendant then filed a reply in the nature of a general denial. A jury was waived and trial was had before the court, which found for the defendant. Judgment was en-

tered against the plaintiff for costs, from which he appeals, assigning sixteen different errors, the substance of which is that the court "erred in determining the facts in the case" and "should have rendered judgment for the plaintiff."    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. W. H. A. Henner.*

For respondent there was a brief and an oral argument by *Mr. C. J. Ferguson.*

JOHNS, J.—1. The complaint is founded upon a specific contract between the plaintiff as district attorney and agent of the defendant, to recover the agreed and stipulated price of alleged services rendered by Wynn and others to the defendant. It is contended that the plaintiff as such district attorney had legal authority to make such contracts; that he did make them and that by reason thereof the county is liable for the amount of the agreed price. In a measure this involves the construction of Chapter 141, Laws of 1915, known as the Prohibition Act, and the powers and duties of the district attorney under this act. The primary purpose of this law is to prohibit the manufacture and sale of intoxicating liquors and to make it the duty of city, county and state officers to see that it is enforced. Section 24 of the act provides that "it shall be the duty of the district attorneys in this state to diligently prosecute any and all persons violating any provisions of, and otherwise to enforce, this act in their respective counties"; that for any failure or neglect to perform such duty the officer shall be deemed guilty of a misdemeanor and subjected to fine and imprisonment, and that whenever any prosecuting officer

shall fail or neglect to enforce these provisions, the Governor, as the chief executive officer of the state, shall appoint prosecutors in his discretion, who shall perform like duties and have like powers as the district attorney. Section 25 provides:

"All expenses incurred and disbursements made by or under the direction of the district attorney, or the prosecutor appointed by the Governor, in obtaining or attempting to obtain evidence, or otherwise, in prosecuting violators of this act, shall be paid by the County Court of the county in which violation shall be alleged to have been committed, upon the voucher of said district attorney or prosecutor appointed by the Governor, out of the general fund of said county."

The alleged services were performed at the instance and request of the district attorney and not by a prosecutor appointed by the Governor.

There was a general denial of the contract and the performance of services. The case was tried without a jury by the court, which found for the defendant. Assuming, without deciding, that all expenses incurred by the district attorney should be paid by the County Court, the statute does not authorize the district attorney as the agent of the county to make a specific contract for such services or to define or specify the amount which the county shall pay, and in the absence of statutory provision the district attorney would not have the legal right to execute a contract which would be binding on the county. Section 937, L. O. L., enacted in 1862, provides that the County Court has the authority and powers pertaining to county commissioners to transact county business and that it shall have "the general care and management of the county property, funds and business where the law does not otherwise expressly provide." Without

an express provision in the statute or an authorized contract, a county should be required to pay only the reasonable value of any services or labor performed. In the case of *Brewster* v. *Springer,* 80 Or. 68 (156 Pac. 433), upon which the plaintiff relies, the statute expressly provided the compensation in dispute. There is no such provision in Section 25 of the Prohibition Act. If the county is liable for the alleged services, it is liable only for the reasonable value thereof. The plaintiff seeks to recover upon a specific contract for services rendered at an agreed and stipulated price, and does not allege or prove the reasonable value thereof.

The judgment of the Circuit Court is affirmed.

AFFIRMED.

McBRIDE, C. J., concurs.

BENNETT, J., Concurring in Result.—I concur in the result reached by Mr. Justice JOHNS.

2. I think the words "expenses incurred and disbursements made by or under the direction of the district attorney" had reference to ordinary expenses and disbursements of such officer, which he either actually disbursed or for which he made himself personally liable, such as hotel bills, railroad fare, etc., which were incurred while in the prosecution of violators of the prohibition law.

It was not, it seems to me, the intention of the legislature to give the district attorney power, under this clause, to employ agents by the month to travel over the country in the ferreting out of possible offenders of this kind.

If the district attorney has this power it must also belong to any of the special prosecutors appointed by the Governor, as the two are coupled together in the

clause in regard to expenses. Again, if both the district attorney and any other prosecutor appointed by the Governor, have the power to employ agents and fix their fees, then these other agents if directed by the district attorney or the special prosecutor, may in their turn appoint still other agents and so the process might go on unendingly.

It seems to me this construction should not be given to the act unless the language employed by the legislature is entirely plain and compelling. If the legislature had intended anything of this kind it would no doubt have plainly provided that the district attorney might appoint and employ other agents. Any such authority to involve the counties in liability by the wholesale ought not to be implied from any doubtful or uncertain words.

BEAN, J., Dissenting.—This appeal is taken by the plaintiff. It involves the payment of expenses incurred in 1916 under the direction of the district attorney for that county in obtaining or attempting to obtain evidence of a violation of Chapter 141, Laws of 1915, relating to intoxicating liquors. The district attorney employed certain persons to act as detectives. They were to make an investigation and endeavor to obtain such evidence. That officer duly certified to the claims for such expenses, and the same were presented to the County Court for that county and disallowed, whereupon an assignment of the claims was made to the plaintiff, and an action instituted to collect the amounts. As indicated in the brief on behalf of defendant, there is no dispute in regard to facts. The defendant contends that the claims are not legal claims against the county, principally for the reason that they were never authorized by the County Court. It is

also urged that the incurrence of the indebtedness was unnecessary, that the regular officers of the county were able and willing to give every assistance to the district attorney in the enforcement of the law, and that consequently the district attorney was without power to bind the county or to engage the services of the so-called detectives.

It is also ·asserted on behalf of the defendant that the plaintiff failed to show that there had been violations of the prohibition law in Klamath County, or that the regular officers of the county, and City of Klamath Falls refused or failed to assist the prosecutor in the enforcement of the law.

It seems that it is a sufficient answer to the contention made on behalf of the defendant that the very language· of the act, Section 25, plainly requires the County Court to pay such expenses "upon the voucher" of the district attorney or prosecutor, appointed by the Governor, out of the general fund of the county.   That section, *inter alia* commands that:

"All expenses· incurred and disbursements made by or under the direction of the District Attorney, or the prosecutor appointed by the Governor, in obtaining or attempting to obtain evidence, or otherwise, in prosecuting violators of this Act, shall be paid by the County Court of the county in which violation shall be alleged to have been committed, upon the voucher of said District Attorney ·or prosecutor appointed by the Governor, out of the general fund of said county."

In other words, the statute is mandatory and the County Court under its terms, when such expenses have been incurred and properly certified to and vouched for by the district attorney or prosecutor, has no other recourse except to allow them to pay the same.   It is urged on behalf of the county that the

93 Or. —35

employment of a detective or attempting to obtain evidence in regard to the violation of the statute rests solely with the County Court; that it is a judicial matter and the district attorney is not authorized to perform such a function. The application of the principle involved is not new. In *Brewster* v. *Springer,* 80 Or. 68 (156 Pac. 433), a similar question was involved. There the water commissioner incurred expenses of a water-master and vouched the same to the County Court under Section 6619, L. O. L., and the county resisted the payment of the amount. In that case, Mr. Justice EAKIN said:

"Where the claim is properly presented in the manner hereinbefore indicated, we think the County Court has no discretion to refuse to allow it. Section 6619, L. O. L., is mandatory. It provides that upon the presentation by the water-master of his claim, approved by the division superintendent and accompanied by the written demand of the water users, the County Court shall allow it. A claim so approved and accompanied with the demand, if the services were rendered upon the demand of the water users, is absolutely conclusive upon the County Court. If the services were rendered upon the order of the division superintendent, the claim, if approved by him, is likewise conclusive, and the court cannot go behind such approval."

The same question was before this court again in *Brewster* v. *Crook County,* 81 Or. 435 (159 Pac. 1031), and the principle annunciated by Mr. Justice EAKIN was applied and the statute enforced. As to the act being a judicial one for the County Court instead of for the district attorney, a similar question was passed upon by this court in *Evanhoff* v. *State Industrial Accident Commission,* 78 Or. 503 (154 Pac. 106). In that case it was urged that the act in question conferred judicial and legislative functions upon the

Industrial Accident Commission, and was therefore in contravention of Article III, Section I, of the Constitution. Mr. Justice McBRIDE disposed of the question at page 515 of the opinion (154 Pac. 1, 10), in the following language:

"This identical question is passed upon adversely to plaintiff's contention in *Re Willow Creek*, at pages 610, 611 of 74 Or. (144 Pac. 505, 146 Pac. 475), and that opinion and the authorities there cited are so conclusive as to render further discussion of the subject unnecessary."

On page 516 of 78 Or. (on page 110 of 154 Pac.), the same learned jurist said after quoting Article VII, Section 1, of the Constitution, as amended in 1911 (see Laws of 1911, page 7):

"It would appear that the power of the legislature or of the people to confer judicial powers upon any tribunal which it or they may select is, by the force of this amendment, practically an unlimited one so long as the different functions of government, executive, legislative and judicial are not so blended as to contravene Section 1, Article III, of the Constitution, which, as shown in the case last cited, is not the case here."

We apprehend that the same rule of construction would be adopted in considering a statute enacted for the purpose of decreasing the use of whisky as a beverage, that would be applied to one passed to facilitate the use of water. Indeed, Section 937, L. O. L., providing that the County Court shall have authority and powers pertaining to county commissioners to transact county business, and that it shall have "the general care and management of the county property, funds, and business, *where the law does not otherwise expressly provide*" seems to contemplate that the legislature may at any time enact a law for the man-

agement of the county business by an official, or a tribunal, other than the County Court. In *Flagg* v. *Marion County,* 31 Or. 18 (48 Pac. 693), it was held that the power expressly conferred on the county clerk by Section 47 of the statute commonly known as the "Australian Ballot Law" (Laws 1891, pp. 14, 23), to cause the official ballots to be printed, implies the power to bind the county by a contract for such printing, subject to the limitation that the price agreed to be paid must be reasonable. And in the case of *Burrell* v. *City of Portland,* 61 Or. 105, at page 111 (121 Pac. 1, at page 3), this court said:

"Whenever a power is given by statute, everything necessary to make it effectual is implied. It is a well-established principle that statutes containing grants of power are to be construed so as to include the authority to do all things necessary to accomplish the object of the grant. The grant of an express power carries with it by necessary implication every other power necessary and proper to the execution of the power expressly granted: Lewis' Sutherland, Statutory Construction, § 508."

As to the contention that the district attorney could only incur such expenses after an indictment was returned or a complaint filed and a prosecution was actually pending for a violation of the statute, a reading of the statute indicates that it contemplates that the investigation to be made, or the endeavor to obtain evidence of the violation of the law, is for the purpose of ascertaining whether or not there has been an infraction of the statute; and if a breach of the law is detected that the evidence thus obtained will be used in the prosecution of the violator. While it may be true that the law-breakers would desire that no means be afforded for obtaining evidence of a violation of the prohibition law before a criminal action was actu-

ally pending in court, as in that event there would probably be few, if any, prosecutions for a violation of this statute, it would not be charitable to entertain the view that the lawmakers had any such intent in mind. The law is drastic, and plainly provides for a rigid enforcement thereof. By Section 24, the district attorney is enjoined to diligently prosecute all persons violating any of the provisions of the act, and to enforce the law. If any district attorney, or prosecuting officer fails, neglects or refuses faithfully to perform any duty imposed upon him by the act, provision is made that upon conviction thereof such official shall be punished by a fine or imprisonment in the county jail, and such conviction requires a forfeiture of his office. It provides that in case of the inability or neglect, or refusal of any prosecuting officer to enforce the provisions of this act, the Governor shall appoint as many prosecutors as he may deem necessary; and designate their salary or compensation. Section 25 plainly provides that the salary or compensation allowed under this act shall be paid by the County Court of the county to which said prosecutor may be assigned, and also in compulsory terms requires that all expenses incurred and disbursements made by or under the direction of the district attorney, or the prosecutor appointed by the Governor, in obtaining or attempting to obtain evidence, or otherwise, in prosecuting violators of this act, shall be paid by the County Court of the respective county. The law does not make it necessary that the district attorney shall show that there have been violations of the law nor that there has been a failure on the part of the regular officers to assist in the enforcement thereof, as a condition precedent to the employment of a detective and the incurring of expenses to be paid by the

county.  That part of the statute relating to expenditures like those involved herein was obviously inserted to overcome the difficulty portrayed in the case of *Cunningham* v. *Umatilla County,* 57 Or. 517 (112 Pac. 437, 37 L. R. A. (N. S.) 1051).  There the payment of the services of a detective employed in procuring evidence against the offenders against the local option law which were ordered to be paid by the County Court was contested by a taxpayer.

It seems to the writer that it was plainly the intent of the lawmakers not only to require a diligent investigation and enforcement of the prohibition law, but also to provide the means of defraying expenses thereby incurred by the prosecutor.  The result of the efforts made under the direction of the district attorney and some of the prosecutions instituted are mentioned in the record.  The reasonableness of the amount of the expenses incurred is not questioned in this proceeding.  The facts are practically undisputed.

Under the authority of the cases above cited heretofore presented to this court, the judgment of the lower court should be reversed, and judgment entered as prayed for in the complaint.