Argued and submitted October 15, 1984, affirmed in part and reversed in part
February 27, 1985

# BURKS et al,
*Appellants,*

*v.*

# LANE COUNTY et al,
*Respondents.*

(16-83-06836; CA A30906)

695 P2d 1373

Bruce Smith, Eugene, argued the cause for appellants. With him on the briefs were Jacquelyn Romm, and Cass, Scott, Woods & Smith, Eugene.

John Hoag, Assistant County Counsel, Eugene, argued the cause for respondents. With him on the brief was Lane County Office of Legal Counsel, Eugene.

Before Richardson, Presiding Judge, and Buttler and Warden, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiffs in this declaratory judgment action are residents of Lane County and its sheriff. They contend that defendants county and county officers failed to appropriate adequate funds in the 1983-84 budget to enable the sheriff to perform his mandated law enforcement duties and functions and that defendants thereby violated the Oregon Constitution and the mandating statutes. Plaintiffs also contend that the county's budgeting decision had the effect of removing functions from the sheriff's department without his consent or voter approval and therefore violated chapter IV, § 22(2), of the Lane County Charter. Plaintiffs pleaded two claims, only the first of which *appears* to be the subject of any of their arguments in this appeal. In any event, the analysis that is decisive of the first claim also disposes of the second. The relief plaintiffs sought in their first claim is a declaration that defendants "are required * * * to provide funds for the Lane County Sheriff and Department of Public Safety to reasonably perform its law enforcement functions and responsibilities."

Defendants' answer contains responsive and affirmative matters and a counterclaim that sets out four "claims for relief." Defendants' second claim was dismissed without prejudice pursuant to the parties' stipulation, and it is not an issue in this appeal. Defendants allege in their first claim that the sheriff's only law enforcement duty "is to keep his eyes open for evidence of public offenses," that he is not required to patrol streets or maintain a detective force, that defendants have allocated sufficient funds to enable the sheriff to perform his law enforcement duties and that the sheriff "must perform his law enforcement duty within the fiscal limitations imposed by the defendants in determining how Lane County's revenues will be allocated." Defendants contend in their third claim that they have authority under the Local Budget Law, ORS 294.305 *et seq,* to determine the number of personnel and the amount of funding for various programs conducted by the sheriff and that he is bound by those decisions, notwithstanding the provisions in ORS chapters 204 and 206 which defendants apparently understand plaintiffs to contend, give the sheriff certain authority over allocation of personnel and funds. Defendants' fourth claim alleges that the voters' defeat of proposed levies has "removed the function of patrol and

reduced detective services from the sheriff" and thereby defeats plaintiffs' contention that defendants violated the requirement of the county charter that no functions be removed from the sheriff's department without his approval or that of the voters. Defendants prayed for a very detailed declaration tracking the contentions in their counterclaim.

Defendants moved for summary judgment on their first, third and fourth claims and on plaintiffs' first claim. The trial court granted the motion and entered a judgment, the operative part of which reads:

"IT IS HEREBY ORDERED that Judgment is entered on behalf of the defendants and against the plaintiffs on the plaintiff's [sic] First and Second Claims for Relief.

"IT IS FURTHER ORDERED that Judgment is entered on behalf of the defendants and against the plaintiffs on defendant's [sic] First, Third and Fourth Counterclaims for Relief against the plaintiffs."

Plaintiffs appeal. We affirm in part and reverse in part.

 There are a number of problems with the procedure that was followed in this case and with the way it has been presented. Those problems impede our review, and it is arguable that one of them defeats our ability to review this appeal at all. That problem is that the judgment does not declare the rights of the parties; it simply recites that defendants prevail on each of the decided claims. If a justiciable controversy is pleaded in a declaratory judgment action, the parties are entitled to a declaration of rights. *Cabell et al. v. Cottage Grove et al.,* 170 Or 256, 130 P2d 1013 (1942). However, the parties here do not argue that the form of the judgment is defective, and we conclude that the judgment is sufficiently clear to enable us to know what the court decided and to perform our review function. In *Rayson v. Rush,* 258 Or 315, 483 P2d 73 (1971), the court held, in effect, that the trial court's finding "that the plaintiff has not established that he is entitled to the relief prayed for and that the defendant has established the allegations of his first and second affirmative defenses," although not in the form of a declaration, made it clear what the parties' rights were when it was read in the light of the pleadings. Similarly, we are able to discern here that the trial court concluded that plaintiffs do not have the rights asserted in their claims and that defendants have the rights

and plaintiffs have the duties alleged in the three counterclaims that were adjudicated.[1]

■ The county's 1983-84 appropriations for the Department of Public Safety in general and for law enforcement services specifically were substantially lower than the appropriations in the preceding fiscal year. A number of serial levies was submitted to the county voters to augment the funding for the sheriff, but they were defeated. Plaintiffs alleged that the 1983-84 budget "required the elimination of all law enforcement and police services on June 30, 1983, except for [contracted] positions." However, there was no evidence in the summary judgment proceeding to indicate that *no* funds or personnel were available under the budget for the sheriff's use in connection with law enforcement.

The statutes on which plaintiffs base their first claim are ORS 206.010 and 204.601. The former provides:

"The sheriff is the chief executive officer and conservator of the peace of the county. In the execution of his office, it is his duty to:

"(1) Arrest and commit to prison all persons who break the peace, or attempt to break it, and all persons guilty of public offenses.

"(2) Defend his county against those who, by riot or otherwise, endanger the public peace or safety.

"(3) Execute the process and orders of the courts of justice or of judicial officers, when delivered to him for that purpose, according to law.

"(4) Execute all warrants delivered to him for that purpose by other public officers, according to law.

"(5) Attend the terms of the Supreme, circuit, or county court held within his county, and to obey its lawful orders or directions."

ORS 204.601 provides:

---

[1] It is also noteworthy that, although the Supreme Court reversed the trial court's judgment in *Cabell et al. v. Cottage Grove et al., supra,* because of the court's failure to make a declaration of rights, it nevertheless addressed the merits in order "to obviate another appeal." 170 Or at 262. The same course would be indicated here for the same reason, even if the judgment were defective. However clear the judgment may or may not be, the parties' contentions are clear, and we conclude that the only issues that can be decided in this case are legal ones.

"(1) The county court or board of county commissioners of each county shall fix the number of deputies and employes of county officers whose compensation is to be paid from county funds.

"(2) All such deputies and employes shall be appointed by such county officer, and shall hold office during the pleasure of the appointing officer."

Plaintiffs argue, *inter alia:*

"The sheriff has the responsibility to perform his statutorily mandated law enforcement duties, and must be funded at a level which will permit him to do so. Funding for a lone sheriff who keeps his eyes open for evidence of public offenses is inadequate.

"* * * A county is an agency of the state and may be compelled to perform obligations imposed by state law. * * * [B]oth state law and the Lane County Charter require the sheriff to provide law enforcement services to the public and require the county to fund the sheriff to enable him to do so.

"* * * * *

"There are disputed facts concerning the law enforcement requirements and capabilities of the sheriff's department under present funding and an evidentiary hearing is necessary to develop the facts to establish a level of service commensurate with the sheriff's law enforcement responsibilities."

The problem with plaintiffs' argument is that they assume the answer to the threshold question, and the answer they assume is not the right one. Plaintiffs argue, correctly, that the sheriff has law enforcement duties that are defined by statute and that the county has a statutory responsibility to provide funds for the sheriff's performance of his duties. However, plaintiffs then postulate that *the court* may decide what volume of law enforcement services and what amount of county funding are required by the statutes. The initial question, in our view, is *who* has the authority to make those decisions. In considering that question, two facts must be borne in mind: first, the county has appropriated *some* funds for law enforement and for personnel whom the sheriff can use in connection with his law enforcement duties; and, second, the controversy here concerns the county's prospective funding for law enforcement services in its budget, as opposed to any consummated failure by the sheriff to perform or the county to pay for particular exercises of the sheriff's law enforcement responsibilities.

ORS 206.010 does not prescribe the amount of funding counties must budget for the sheriff's duties it defines, and ORS 204.601(1) gives county governing bodies express authority to fix the number of deputies and employes of sheriffs and other county officers.[2] We conclude that, when a state statute mandates a service and requires counties to provide funding for it but does not specify a service level, an amount of funding or an alternative method for determining the amount of funding, the statute necessarily leaves *at least* the *budgetary* decision over the amount of funding to the county governing bodies. *See Multnomah County v. Luihn et al.,* 180 Or 528, 539-44, 178 P2d 159 (1947), *overruled on different grounds, State ex rel. v. Malheur County Court,* 185 Or 392, 428, 203 P2d 305 (1949); *cf.* 2 McQuillin, Municipal Corporations 239, § 4.159 (3d ed 1979 rev ed) ("[T]he power of the legislature to compel municipal acts to accomplish a result in which the state has an interest in its governmental capacity does not extend to depriving a municipality of discretion as to the means or method of accomplishment, or the expense it will incur for that purpose, where such minute or specific control in details or means is not essential to the accomplishment of

---

[2] Plaintiffs also rely in their brief—although not in their pleadings—on ORS 206.210. It provides:

"Notwithstanding the provisions of ORS 241.020 to 241.990 or any other county civil service law or regulation, the sheriff may organize the work of his office so that:

"(1) The various duties required of the office may be assigned to appropriate departments and divisions to be performed by persons experienced and qualified for such respective kinds of work.

"(2) The duties of his various assistants, officers and deputies are coordinated so that, when not engaged in a particular duty specified or directed to be done and not then requiring attention, such persons shall perform the other duties required of the office and then required to be done.

"(3) The cooperation among assistants, officers, deputies and employes in the departments and divisions may be secured for the purposes of avoiding duplication of time and effort."

That statute does not appear to us to have substantial bearing on the issues here. It relates to the sheriff's authority to organize his office and to assign personnel; it does not relate to the number of personnel or the amount of funds that must be provided for particular purposes. The trial judge indicated in his oral comments to counsel that the statute has no relevance to the issues here and that it does nothing more than create exceptions to requirements of the civil service statutes. We do not consider it necessary to our decision to determine what the statute *does* do; it is sufficient to decide that it does *not* do the things we have noted.

the result which constitutes the basis of the legislative right of control.").

Most of the cases on which plaintiffs rely fall into one of two categories, and they are wholly distinguishable if not entirely inapposite. The first category is exemplified by *Gleason et al v. Thornton,* 210 Or 666, 313 P2d 776 (1957), where the court held that the county was required by ORS 180.070 to pay certain costs for an Attorney General's investigation and that the Local Budget Law did not apply to those costs. The court reasoned that the statute "imposed on the county an involuntary liability for the expense * * * and to that extent the restrictions of the local budget laws were impliedly removed." 210 Or at 678-79. *State ex rel. v. Malheur County Court, supra,* best illustrates the second kind of case on which plaintiffs rely. The court held there that the county was required to levy a tax and budget the specific amount for welfare purposes that the State Public Welfare Commission determined pursuant to a statute that gave the commission express authority to establish the amount and that expressly required that "the amount so found shall be included in the budget of [the] county." Or Laws 1947, ch 545, § 2. Here, unlike in *Thornton,* the issue in connection with plaintiffs' claim is whether the county has a statutory duty to provide a specific amount of funds, not whether a clear statutory requirement that a county pay a specific sum is subject to or modified by the Local Budget Law. Unlike in *Malheur County Court,* the statutes in question here do not specify the amount of funding the county must provide or give any body other than the county governing body authority to establish the amount.

The Oregon case that plaintiffs appear to regard as most analogous is *Cunningham v. Umatilla County,* 57 Or 517, 112 P 437 (1910). There, the county's district attorney employed a private detective. The district attorney had no authority to do so. The county court nevertheless ordered the bill paid, and the plaintiffs sought to enjoin payment of the bill. The court first concluded:

> "While the original employment of the detective in this matter was irregular and legally unauthorized, the action of the county court in allowing the bill and directing the payment of it amounted to a ratification of the original employment, so in this respect the case stands in the same condition

as if the county court had employed the detective in the first instance * * *." 57 Or at 519.

The court then went on to hold that payment of the bill would not violate the constitutional debt limitation, Or Const, Art XI, § 10, because "the protection of society, the enforcement of law, and the punishment of crime" are duties "that [admit] of no volition," that there is a duty to make expenditures for them and that they therefore are involuntary expenditures and are not subject to the debt limitation. 57 Or at 520. Plaintiffs emphasize the court's disposition of and discussion of the debt limitation issue. They make no reference to the court's inferential conclusion that the detective's bill would not have been due from the county if its governing body had not ratified the district attorney's contract.

In any event, the language in *Cunningham* that plaintiffs emphasize loses any authoritative weight it might have had in the light of the court's later holding in *Irwin v. Klamath County,* 93 Or 538, 183 P 780 (1919). The court there held that the county was not liable on its district attorney's contract with a private individual whom he had hired to perform prohibition enforcement services. The court said:

"* * * Assuming, without deciding, that all expenses incurred by the district attorney should be paid by the County Court, the statute does not authorize the district attorney as the agent of the county to make a specific contract for such services or to define or specify the amount which the county shall pay, and in the absence of statutory provision the district attorney would not have the legal right to execute a contract which would be binding on the county. * * *" 93 Or at 542-43.

The court did not suggest in *Irwin* that there was any overriding county duty to pay for law enforcement services that required the county to honor the unauthorized contract.[3]

Plaintiffs also cite *Nearing v. Weaver,* 295 Or 702, 670 P2d 137 (1983), and *Hamilton and Hamilton,* 66 Or App 936, 676 P2d 341 (1984). The Supreme Court held in *Nearing* that

---

[3] *Irwin* and, to a lesser extent, *Cunningham* were decided on the basis of, or in view of, various statutes that were in effect at the times of the respective decisions. We do not suggest that *Cunningham* or *Irwin* remains the best authority on the issue of whether and when counties *can* be bound by contracts of their officers. That is not the issue here, and *Cunningham* and *Irwin* are relevant only by analogy.

officers who knowingly fail to comply with court orders under the "Abuse Prevention Act," Oregon Laws 1977, chapter 845, can be held civilly liable. In *Hamilton,* we held that the sheriff has a mandatory duty under ORS 206.030 to serve civil summonses. Neither case is in point. The question in connection with plaintiffs' claim is whether the county is required by statute to provide a particular funding level, greater than the one it did provide, for the sheriff's performance of his law enforcement duties. There is no question before us in this case concerning the county's possible liability if its funding decision results in injuries attributable to the sheriff's inability to perform his duties. There is also no question in this case about whether the county can be compelled *after the fact* to pay for *specific* services of the sheriff that he must provide and that the budget does not cover.

Reduced to essentials, plaintiffs' contention is that the amount of funds that the county commissioners budgeted for law enforcement services was less than the sheriff thinks he needs. As we have noted, the relevant statutes do not specify what level of funding the county must provide, and the funding level is a matter for the commissioners—not the sheriff and not the courts—to decide. The trial court correctly held that plaintiffs were not entitled to prevail on their claims.

■ We turn to the judgment for defendants on their claims. Defendants contend in their fourth claim that:

> "By defeating levies which were dedicated to the Sheriff's operations, the voters, at least temporarily, have removed the functions of patrol and reduced detective services from the Sheriff."

We do not agree that the vote had that effect. Lane County Charter, chapter IV, § 22(2)(c), provides that any action

> "to take from [the department of public safety] any of its functions may have no legal effect until approved either
>
> "(i) by the head of the department or
>
> "(ii) by the legal voters of the county at a regular or special county election."

Neither the county's budget decision nor the voters' rejection of the levies *took away* any of the sheriff's *functions.* Those events simply resulted in what the sheriff regards as inadequate funding for the functions; they did not divest him of

authority to perform the functions, whether or not they affect his ability to perform them. We accordingly reverse the judgment for defendants on that claim.

We also reverse the trial court's judgment for defendants on their first and third claims. In the first claim, defendants sought a definition of the sheriff's duties under ORS 206.010 and a declaration that those duties were sufficiently funded in the 1983-84 budget. For largely the same reasons that we decline to hold, in accordance with plaintiffs' contention, that the funding was *not* adequate, we decline to hold that the funding was adequate. Our disposition of plaintiffs' claims leaves no present controversy between the parties that requires us to resolve the contention in defendants' first claim, even if that contention were an appropriate one for judicial resolution.

Defendants' contention in their third claim is, in effect, that the Local Budget Law gives the county governing body authority to decide whether to expend funds and how much to expend for law enforcement purposes, notwithstanding anything to the contrary in ORS chapters 204 and 206. Because we conclude that the relevant provisions in chapters 204 and 206 do not require a different funding decision than the county made, it is a hypothetical question whether the budget law would relieve the county of any duty to comply with the substantive expenditure requirements of other statutes. *But see, e.g., Gleason et al v. Thornton, supra; School District No. 4 v. Bayly et al.,* 192 Or 548, 235 P2d 911 (1951).

Judgment for defendants on plaintiffs' claims affirmed; judgment for defendants on their counterclaims reversed.