Argued and submitted May 8, 1987, at Pendleton, Oregon, reversed and remanded
July 29, 1987

# MASON,
## formerly Woods,
*Appellant,*

*v.*

# WINDSOR et al,
*Respondents.*

## (84-12-1112; CA A39444)

740 P2d 214

Richard E. Fowlks, Portland, argued the cause and filed the brief for appellant.

Michael B. Collins, Pendleton, argued the cause for respondent Donal B. Windsor. With him on the brief was Collins & Collins, Pendleton.

No appearance for respondent Loree W. Cortez.

Before Joseph, Chief Judge, and Richardson and Warren, Judges.

WARREN, J.

## WARREN, J.

Plaintiff brought this declaratory judgment action to have his rights determined in certain real property which was conveyed in 1942 to his grandmother, Florence Bowman Windsor (Mrs. Windsor), for life, with the remainder to "the heirs of her body." Mrs. Windsor died in 1984. In 1975, she purported to convey the property to defendants, her surviving children. Plaintiff is the son of Mrs. Windsor's third child, who predeceased her.

■ Defendant Donal Windsor (Windsor) moved for summary judgment. The trial court first concluded that Mrs. Windsor had acquired fee title in 1942 rather than a life estate only.[1] It then ruled that the 1975 conveyance to defendants, which plaintiff argued was the product of Windsor's undue influence, was valid. The court granted Windsor's motion and entered judgment for both defendants. Plaintiff appeals, contending that his own affidavit and other evidence in opposition to the motion for summary judgment were sufficient to create a genuine issue of material fact as to whether Windsor exercised undue influence on his mother in connection with the 1975 conveyance. We agree that plaintiff's evidence was sufficient to demonstrate the existence of a factual question about undue influence.

■ Windsor argues[2] that, as originally pleaded and formulated, plaintiff's argument was that he had rights in the property as a remainderman, which ripened automatically upon the life tenant's death. According to Windsor, after the trial court concluded that Mrs. Windsor acquired a fee title rather than a life estate and could convey title, plaintiff switched his ground, asserted the undue influence theory and contended that the 1975 conveyance should be set aside. The effect of plaintiff's prevailing on that argument, presumably, would be that his basis for claiming rights in the property would stem from his status as a beneficiary of his grandmother's will rather than as the holder of a remainder interest.

---

[1] Plaintiff does not challenge the correctness of that conclusion, and it is not an issue on appeal. However, we imply no agreement with the conclusion, which was based on the Rule in Shelley's Case. *See* 1 Co. Rep. 93b, 104a (1579-1581); *see also* ORS 112.345; *Hawkins & Roberts v. Jerman,* 147 Or 657, 35 P2d 248 (1934); O'Connell, "The Rule in Shelley's Case in Oregon," 20 Or L Rev 103 (1941).

[2] Defendant Cortez has not appeared in this appeal.

Windsor does not argue that the plaintiff's new theory was beyond the scope of the pleadings or could not properly be raised for other reasons. He contends only that plaintiff's challenge to the 1975 conveyance is barred by laches. However, the laches defense itself turns on questions of fact, and the record would not permit summary judgment on the basis of laches.[3]

Windsor argues finally that parts of plaintiff's affidavit and his other opposing evidence consist of hearsay and other matter which are either inadmissible or are based on belief rather than personal knowledge. Assuming the correctness of all of Windsor's evidentiary assertions which are even arguably right, there was still enough evidence to establish the existence of a genuine question of material fact.[4]

Reversed and remanded.[5]

---

[3] Windsor argues that, after the analogous limitations period has run, "the plaintiff has the burden to prove the absence of laches." However, the party moving for summary judgment has the burden of showing an absence of genuine and material factual questions. There is not nearly enough in the record regarding laches for plaintiff to have acquired any burden to prove its absence. Moreover, we do not understand the trial court's ruling to have been based on the laches issue.

[4] Plaintiff's affidavit is written in an argumentative style and, as a consequence, he uses expressions such as "it is my understanding" and "it is my belief" to preface some of the facts and inferences that he discusses. In some instances, it is clear that his information is not first hand; in others, it is clear that his information and the inferences he draws from it are based on personal knowledge, notwithstanding the prefatory language. To the extent that plaintiff's attorney assisted him in drafting the affidavit, the distinctions between an affidavit and a trial memorandum might have been better borne in mind, but the stylistic curiosities do not obscure the differences between what plaintiff knew and what he had simply heard. We note too that, to the extent that he knew things on the basis of *admissible* hearsay, his recitations of what he had heard are as relevant as the hearsay itself might (or might not) be, and that such hearsay is as acceptable a source of his knowledge as any other source would be.

[5] We repeat, *see, e.g., Boyd v. Quick,* 86 Or App 561, 564, n 2, 740 P2d 212 (1987), that summary judgment motions in declaratory judgment actions, especially those triable solely to the court, are generally of dubious utility. Here, in addition to the fact that there were questions of fact, the judgment declared nothing, but simply dismissed the action and awarded defendants their costs. *Compare Burks v. Lane County,* 72 Or App 257, 695 P2d 1373 (1985).